[No. 20523-8-II.   Division Two.   January 9, 1998.]

*In the Matter of the Marriage of* MICHAEL A. BREWER, *Respondent*, and DEBORAH Q. BREWER, *Appellant*.

*Philip A. Foster*, for appellant.

*John R. Stichman* of *Stichman, Hoke & Fels*, for respondent.

SEINFELD, J — Deborah Brewer appeals from a dissolution decree, claiming trial court error in characterizing postdissolution disability payments as Michael Brewer's separate property. During the marriage, Michael had become disabled and began receiving disability payments from several private insurance carriers. Because current case law holds that private disability insurance proceeds purchased with community funds are community property, we agree. Thus, we reverse and remand.

## FACTS

The Brewers married in Washington in 1988. Throughout the marriage, Deborah worked as a public school teacher and possessed substantial property acquired from a previous marriage. Michael, a licensed dentist, entered the marriage with his fledgling dental practice as his sole asset.

Due to illness, Michael stopped working as a dentist in December 1991. A short time later, he was diagnosed with multiple sclerosis (MS). He was 33 years old.

Before the onset of the disability, the Brewers had purchased three disability insurance policies that provided for benefit payments in the event of disability, until such time as the insured recovered, reached age 65, or died. Michael paid the insurance premiums with community funds until early in 1992, when the insurance carriers determined that he was totally disabled. The carriers then waived future premium payments and began paying Michael approximately $6,000 a month in benefits. Michael also began receiving approximately $1,200 a month in social security disability benefits.

Michael filed for divorce in 1995. At trial, insurance

company representatives testified that Michael's disability payments were intended to serve as substitutes for lost future earnings and did not contain any retirement component. They also testified that Michael received his disability benefits tax free because the community had paid the premiums with after-tax funds. A pension consultant, who appeared on Deborah's behalf, estimated that the present value of the three disability insurance policies was approximately $768,000. This calculation was based upon Michael's surviving to age 65.

The trial court, after ruling that the postdissolution payments served as a substitute for Michael's lost future earnings, awarded the disability payments to Michael as his separate property. The trial court further noted that, although the community had paid a total of $12,000 in premiums, any inequity was resolved by the community's receipt of disability benefits of approximately $6,000 a month from the onset of the disability until dissolution, for a total of more than $300,000.

On the whole, the court found that the property division was fair and equitable because Deborah received a larger share of the community property than Michael and had "substantial separate property estate that [Michael did] not have." The court found that the short duration of the marriage and Deborah's independent sources of income made a maintenance award unnecessary.

## ANALYSIS

Deborah contends that the trial court mischaracterized the disability payments as separate property. She argues that because the community paid the premiums, the payments are community assets. Accordingly, she maintains that she is entitled to share in the policy proceeds. Michael asserts that the payments substitute for his lost future earnings and, therefore, constitute separate property.

■ A trial court has broad discretion in making a property division. A reviewing court will not reverse such a de-

cision absent a showing of manifest abuse of discretion. *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992).

In a dissolution proceeding, all of the parties' property, separate and community, is before the court. *In re Marriage of Harrington*, 85 Wn. App. 613, 623, 935 P.2d 1357 (1997). At the outset, a court will presume that all property acquired during marriage belongs to the community. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). This presumption may be rebutted by establishing that the asset fits within a separate property provision. *Short*, 125 Wn.2d at 870; RCW 26.16.010-.030.

A spouse's future earning capacity is not a divisible asset. *In re Marriage of Hall*, 103 Wn.2d 236, 248, 692 P.2d 175 (1984). It is, however, "a substantial factor to be considered by the trial court in making a just and equitable property distribution." *Hall*, 103 Wn.2d at 248. Generally, Washington courts will not divide postdissolution disability benefits that compensate the insured for the loss of future earnings, even though the premiums for the disability coverage were paid with community funds.[1] *In re Marriage of Geigle*, 83 Wn. App. 23, 30, 920 P.2d 251 (1996); *In re Marriage of Nuss*, 65 Wn. App. 334, 343, 828 P.2d 627 (1992); *In re Marriage of Anglin*, 52 Wn. App. 317, 324, 759 P.2d 1224 (1988). In contrast, retirement benefits and other forms of deferred compensation earned during the marriage are divisible as community property. *Geigle*, 83 Wn. App. at 30; *Nuss*, 65 Wn. App. at 343-44.

Private insurance disability benefits appear to be a substitute for future earnings. Nonetheless, two Washington cases have decided that such benefits are community property when the community pays the premiums. *Chase v. Chase*, 74 Wn.2d 253, 444 P.2d 145 (1968); *Ross v. Pearson*, 31 Wn. App. 609, 643 P.2d 928 (1982); *see* 20 KENNETH W. WEBER, WASHINGTON PRACTICE, FAMILY AND COMMUNITY PROPERTY

---

[1]The trial court, however, may award a portion of postdissolution disability payments as maintenance and/or child support. *In re Marriage of Leland*, 69 Wn. App. 57, 67, 847 P.2d 518 (1993).

Law § 32.17, at 190-91 (1997) (noting private disability insurance benefits may be exception to general rule that post-dissolution disability benefits are separate property).

*Chase* involved the distribution of a lump-sum disability insurance benefit paid to Mr. Chase after dissolution when he became disabled. The disability coverage was part of a term life insurance policy that the community had purchased during marriage. At the time, Washington courts apportioned ownership of a term life insurance policy between the estate and the surviving spouse based on the portion of community funds used to pay policy premiums over the life of the policy's coverage. *See Small v. Bartyzel*, 27 Wn.2d 176, 177 P.2d 391 (1947); *Occidental Life Ins. Co. v. Powers*, 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937). But because the community paid a substantial portion of the insurance premiums, the *Chase* court treated the entire benefit as undistributed community property. 74 Wn.2d at 257. *Pearson*, citing *Chase*, reaches a similar result. 31 Wn. App. at 612.

In response to Mrs. Chase's claim to half of the settlement, the *Chase* court stated:

> Insurance proceeds in this state are property . . . and, if the premiums are paid with community funds, the insurance proceeds are community property . . . . The wife's insurable interest in her husband's life does not terminate automatically with the entry of a divorce decree if the policy was taken out during marriage and premiums paid from community funds.

74 Wn.2d at 257. Therefore it apportioned the settlement between the Chases.

Michael contends that *Chase* is no longer viable because the Supreme Court in *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 657-58, 689 P.2d 46 (1984) overruled *Chase*'s underpinnings. The *Wadsworth* court adopted a risk payment theory, holding that the coverage of term life insurance expired at the end of each premium period and, therefore, the determination of whether policy benefits constituted community or separate property hinged on

whether the *last* premium before the accrual of benefits was paid with community or separate funds. 102 Wn.2d at 657-58. But the holding in *Wadsworth* does not affect the instant case because here community funds paid for all the disability coverage.

We agree with Michael that the continuing viability of *Chase* in this context is questionable. *See In re Marriage of Brown*, 100 Wn.2d 729, 738, 675 P.2d 1207 (1984) (holding that tort damages compensating for postdissolution loss of earnings are separate property); *In re Marriage of LeLand*, 69 Wn. App. 57, 71-72, 847 P.2d 518 (1993) (noting that neither *Chase* nor *Pearson* address the distinction between a disability policy and a life insurance policy); *In re Marriage of Huteson*, 27 Wn. App. 539, 542, 619 P.2d 991 (1980) (questioning "both the logic and wisdom of *Chase*"); Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 64-65 (1986) (noting that the treatment of disability benefits in *Chase* and *Pearson* should be reconsidered in light of subsequent cases holding that personal injury damages for lost earning capacity substitute for lost future earnings); *see also In re Marriage of Saslow*, 40 Cal. 3d 848, 710 P.2d 346, 352 (1985) (private disability insurance payments, to the extent they replace postdissolution earnings, are the separate property of the insured). Nonetheless, we find no meaningful way of distinguishing the situation here from that in *Chase* or *Pearson*. Accordingly, we conclude that *Chase* is binding precedent and that the trial court erred in ruling that postdissolution disability payments would be Michael's separate property.

Notwithstanding the trial court's mischaracterization of the postdissolution disability payments, this error does not mandate reversal if the trial court's distribution of property was fair and equitable. *Kraft*, 119 Wn.2d at 450; *Huteson*, 27 Wn. App. at 544. Here, the trial court considered all of the parties' property, both community and separate, when it made the division. Although the trial court felt constrained to award Michael all of the postdissolution disability payments, it found that this disparity was counter-

balanced by (1) Deborah's receiving $69,087 of the community property compared to Michael's $58,191; (2) Deborah's $350,000 in separate property, all of which the court awarded to her; and (3) the community's receipt of more than $300,000 in disability benefits during the marriage.

Considering the factors discussed above along with the limitations on Michael's future earning capacity, his progressive disease that may necessitate unusual health care costs, and Deborah's good health and employability, the property division appears to us to be fair and equitable. But because the trial court's comments indicate that it felt bound to award the disability benefits to Michael, we remand to the trial court to allow it to exercise its discretion to either reaffirm its distribution or to redistribute the property in light of our decision.

We reverse and remand.

HOUGHTON, C.J., and HUNT, J., concur.

Reconsideration granted and opinion modified January 30, 1998.

Review granted at 135 Wn.2d 1009 (1998).