976 P.2d 102 (1999)
137 Wash.2d 756
In re Marriage of Michael A. BREWER, Petitioner,
v.
Deborah Q. BREWER, Respondent.
No. 66577-0.
Supreme Court of Washington, En Banc.
Argued January 14, 1999.
Decided May 6, 1999.
*103 Stichman, Hoke & Fels, John R. Stichman, Susan Diane Pitchford, Vancouver, for Petitioner.
Philip A. Foster, Vancouver, for Respondent.
SMITH, J.
Petitioner Michael A. Brewer seeks review of a decision of the Court of Appeals, Division II, which reversed and remanded to the Clark County Superior Court a ruling characterizing monthly payments to a permanently disabled spouse under a private disability insurance policy after dissolution of a marriage as separate property and not community property. We granted review. We affirm the Court of Appeals in part and reverse it in part.

QUESTION PRESENTED
The question presented in this case is whether monthly payments to a permanently disabled spouse under a private disability insurance policy after dissolution of a marriage constitutes separate property and not community property, even though the policy was acquired during the marriage and premiums were paid from community funds before premiums were waived by the issuing companies.

STATEMENT OF FACTS
Petitioner Michael A. Brewer and Respondent Deborah Q. Brewer were married on May 20, 1988 in King County, Washington.[1] No children were born of the marriage,[2] although Respondent has two children from a prior marriage.[3] Respondent has been a full-time elementary school teacher since 1977 with net income between $2,200.00 and $2,300.00 per month.[4] At the time of the marriage Petitioner was a dentist who practiced his profession at the Kaiser Company until December 1991 when he was diagnosed with a progressively deteriorating disease, multiple sclerosis.[5] Petitioner was unable to continue the practice of dentistry.[6] The Social Security Administration determined him to be permanently disabled. A similar determination was made by the companies issuing his disability insurance policies, Mutual of New York (MONY) and New York Life Insurance Company (NYLIC).[7] Petitioner receives a monthly non-taxable income of $6,193.00 from the disability insurance policies and $1,212.00 from Social Security, totaling approximately $7,400.00.[8] This is his sole source of income.[9]
On March 3, 1995 Petitioner served Respondent with a summons and petition for dissolution of marriage which he filed in *104 the Clark County Superior Court.[10] On March 1, 1996 the Honorable Robert L. Harris signed a decree of dissolution.[11] The following statements concerning. the disability insurance policies were made by the trial court in the findings of fact and conclusions of law:[12]
A. The Petitioner's New York Life and Mutual of New York disability insurance benefits are not assets subject to division in this case. Such benefits should be awarded to the Petitioner Michael Brewer free of any claims of the Respondent Deborah Q. Brewer.
The court notes that the community paid about $12,000 in premiums for such disability pay; however the court also notes that the community received about $6,000 on a monthly basis from these private disability policies, from the time of the Petitioner's disability until, the parties separation, as well as during the period of parties separation under court order which also benefited the parties.
B. Furthermore, the property division in this case is fair and equitable in that it has also taken into account and recognized the disability benefits received and to be received by the Petitioner. The court notes that the Respondent has a substantial separate property estate that the Petitioner does not have. Furthermore, the court has made disproportionate award of community property in favor of the Respondent. The total property award received by Respondent is in excess of that to be received by Petitioner. Such award takes into consideration the fact of the disability payments that Petitioner has and will receive.[[13]]
Each party was awarded all policies insuring their own lives.[14] The parties were to equally divide cassette tapes valued at $1,500.00, family photographs, and share reproduction costs for the photographs.[15] No maintenance was ordered.[16] Child support was not an issue.[17] In the findings of fact and conclusions of law the trial court indicated awards to Petitioner of approximately $56,521.00 net value in community assets, plus a marital lien of $10,000.00, and community debts of $11,500.00 for a total of $55,021.00;[18] and to Respondent approximately $94,057.00 in community assets less the marital lien of $10,000.00, and community debts of $11,800.00 for a total of $72,257.00.[19] Judge Harris determined that, based on this distribution of property, Respondent had a disproportionate award of community property in her favor in addition to approximately $350,000.00 in separate assets, for a total of $422,257.00.[20] The value of assets awarded Respondent far exceeded the value of assets awarded to Petitioner.[21] The specific values constituting the totals were not indicated precisely by the trial court, but a fair summary and comparison of property awarded the parties in this dissolution is represented in the chart which follows.
*105
PROPERTY AWARDED TO PROPERTY AWARDED TO
RESPONDENT DEBORAH Q. BREWER PETITIONER MICHAEL A. BREWER
Community Property Community Property
Beach house in Seaview, Washington. Grand Flamingo time share located in
Approximate value $120,000.00 subject to Nevada valued at $1,000.00 subject to debt
debt of $57,200.00, net $62,800.00. of $6,330.00, net - $5,330.00.
Washington State defined benefit retirement Petitioner's defined benefit plan pension
plan (TERS II). Value $16,782.00 through prior employment as a dentist with
 Kaiser. Value $7,129.00.
Respondent's $1.5 million MONY life $5,866.00 cash withdrawn from MONY life
insurance policy subject to its premiums and insurance policy.
interest. No cash value indicated.
 $8,045.00 insurance payment received from
 Mutual of Enumclaw.
 Petitioner's Jefferson Pilot Life Insurance
 policy. Approximate cash value $1,192.00
*106
 Petitioner's term life insurance policy
 through Kaiser. No cash value assigned.
 Marital lien on family residence,
 $10,000.00.
Beach house furnishings. Value $3,777.00. 
Furniture and furnishings in family 
residence. Value $9,613.00, plus $1,000.00
for the Dickens collection.
 1989 Ford Bronco automobile. Community
 value $14,500.00.
 Personal property valued at $6,500.00.
 Guns valued at $ 1,300.00.
Equal share in cassette tapes valued at Equal share in cassette tapes valued at
$1,500.00, or $750.00. $1,500.00, or $750.00.
Separate Property Separate Property
Family residence in Vancouver, Washington 
valued at $140,200.00, subject to marital
lien of $10,000.00, net $130,200.00.
Jefferson Pilot Life Insurance Policy. Cash 
value $115,000.00.
Jaguar automobile valued at $11,000.00. 
Mountain cabin. No cash value indicated. 
Dean Witter Account. No cash value 
indicated.
$20,000.00 bond gift from Orm Kellet. 
*107
 Disability insurance benefits under the New
 York Life Insurance and Mutual Insurance
 of New York policies. No value indicated.
 Social Security disability payments.
Other Property Other Property
Depository funds in Respondent's name in Bank of Mount Hope depository funds
Northwest Bank. No cash value indicated. valued at $1,090.00. Depository funds in
 Seafirst Bank and Bank of America. No
 cash value indicated.
Frequent flyer miles in Respondent's name Frequent flyer miles in Petitioner's name.
or in the name of her children. No cash No cash value indicated.
value indicated.
Interest in Mount Hood Jazz Festival tickets. 
No cash value indicated.
Equal division of family photographs. No Equal division of family photographs. No
cash value indicated. cash value indicated.
Based upon the dissolution decree, the approximate value of community and separate assets awarded to the parties is indicated in the following summary:

Awarded to Respondent
Deborah Q. Brewer
Community assets $ 94,057.00
Less marital lien -10,000.00
 ___________
Subtotal $ 84,057.00
Less community debt -11,800.00
 ___________
Subtotal $ 72,257.00
Separate assets $350,000.00
 ___________
Total assets $422,257.00
 ===========
Awarded to Petitioner
Michael A. Brewer
Community assets $ 56,521.00
Plus marital Lien -10,000.00
 ___________
Subtotal $ 66,521.00
Less community debt -11,500.00
 ___________
Subtotal $ 55,021.00
Separate assets $ -0-
Total assets $ 55,021.00
 ===========

Although the trial court awarded the disability insurance payments to Petitioner Michael A. Brewer as "separate property," it assigned no value to the policies. The court awarded the family residence in Vancouver, Washington to Respondent as her separate property subject to a lien in favor of Petitioner.[22] The trial court determined the community contributed approximately $20,000.00 in funds and labor to the family residence, entitling the marital community to a claim against the home of $20,000.00.[23] Petitioner was granted a marital lien of $10,000.00, one-half the total, secured by a note and deed of trust at no interest if paid before July 1, 1996.[24] After that date the debt would accrue at 12% per annum until paid.[25]
In addressing the MONY and NYLIC disability insurance policies, the trial court concluded that the community paid the last actual premiums on all policies immediately prior to the onset of Petitioner's disability in December *108 1991,[26] after which no further premiums were paid under waiver provisions in the policies.[27] The trial court concluded that Respondent Deborah Q. Brewer had no claims to the disability policies[28] because (1) the policies were intended to replace future income for Petitioner at income levels he attained before his disability and at levels for a dentist which were expected to increase;[29] (2) the policies were not intended for retirement purposes because they terminate when Petitioner reaches age 65;[30] and (3) the community paid approximately $12,000.00 in premiums on the policies and received from them approximately $300,000.00 in monthly disability payments prior to the dissolution.[31]
The Court of Appeals, the Honorable Karen G. Seinfeld writing, reversed the trial court, holding that the court "erred in ruling that [Dr. Brewer's] postdissolution disability payments [are] ... separate property."[32] The case was remanded to allow the trial court to "exercise its discretion to either reaffirm its distribution [of property] or redistribute the property" according to the Court of Appeals' decision.[33] Petitioner then sought review by this Court, which was granted on July 8, 1998.

DISCUSSION
Petitioner Michael A. Brewer contends the Court of Appeals erred in ruling that private disability insurance benefits are a divisible asset in a dissolution proceeding. He claims that court's decision is in conflict with Supreme Court decisions in In re Marriage of Brown[34] and In re Marriage of Hall[35] and in conflict with prior Court of Appeals decisions in In re Marriage of Huteson[36] and In re Marriage of Anglin.[37]
Respondent Deborah Q. Brewer answers to the contrary that the Court of Appeals was correct. She asserts that the decision is based on Chase v. Chase[38] which has not been overruled by Brown, nor is it in conflict with Brown because the cases have different facts and address different issues. Neither party disputes the trial court's findings of fact. They are thus verities on this appeal.[39]
The principal issue addressed by the Court of Appeals was whether the "trial court err[ed] in characterizing postdissolution disability payments as [Petitioner Michael A. Brewer's] separate property."[40] Despite questioning the continued viability of Chase, the Court of Appeals relied upon it in concluding that the trial court mischaracterized as Petitioner's separate property monthly payments under the disability insurance policies privately purchased with community funds.[41]
Characterization of property as community or separate is not controlling in division of property between the parties in a dissolution proceeding, but[42] "the court must have in mind the correct character and status *109 of the property ... before any theory of division is ordered."[43] All property, both separate and community, is before the court.[44] Under RCW 26.16.010 and RCW 26.16.020 separate property is "[p]roperty and pecuniary rights" owned by each spouse before marriage or acquired afterwards by gift, bequest, devise, descent or inheritance." Under RCW 26.16.030 community property is property that is not defined as separate property under RCW 26.16.010 or RCW 26.16.020 and is "acquired after marriage by either husband or wife or both...."[45] In prior decisions this Court has favored characterizing property as community instead of as separate property unless there is clearly no question of its character.[46] The decision in Chase is consistent with that approach.[47]
In Chase this Court announced the rule that "if ... premiums are paid with community funds, the insurance proceeds are community property."[48] Respondent asserts "[t]here has been no ... change or inconsistency in Washington law that mandates essentially rethinking [Chase]."[49] This assertion is not correct. Chase does not accurately reflect the current law for characterizing proceeds of insurance policies in dissolution proceedings.[50] Professor Harry M. Cross, an acknowledged authority on community property in Washington, suggests that the rule announced in Chase that "if the community pays premiums, insurance proceeds are community property" should not apply to disability policies.[51] He suggests that disability insurance payments should be characterized in the same manner as tort damages were characterized in Brown.[52]
Brown, in defining community property, limited it to acquisitions "through the toil, talent or other productive faculty of either spouse, but not compensation for personal injury."[53] Under that definition, the case held tort damages which compensate for services or earnings lost by the community, or for expenses incurred by the community during the injury, would be community property;[54] but tort damages which compensate for pain and suffering to the injured party and injury-related expenses after dissolution of the marriage would be separate property.[55] The Court reached this conclusion in order to eliminate the inequity of an uninjured spouse sharing in reimbursement of expenses for which that person has no liability.[56]
A logical application of Brown to privately purchased disability insurance policies suggests that after dissolution of a marriage payment of monthly benefits which constitute future income, or compensation for pain and suffering, should be characterized as separate property even though premium payments were made from community *110 funds during the marriage.[57] Insurance compensating for expenses incurred during a marriage or for earnings lost during the marriage or proceeds that in fact constitute deferred compensation should be characterized as community property in proportion to the community's contribution to those expenses or deferred compensation.[58] This Court has previously recognized disability payments which are in fact deferred compensation in Arnold v. Department of Retirement Sys..[59] Thus, as in Brown, a former spouse not responsible for an injured ex-spouse's future expenses would not "share in reimbursement for expenses which [that person] ... is not obligated to, and does not, pay."[60]
Petitioner asserts that proceeds from privately purchased disability insurance policies should not be a divisible asset in marital dissolution proceedings regardless whether they are characterized as separate property or community property.[61]
Under RCW 26.09.080 trial courts have broad discretion in the distribution of property and liabilities in marriage dissolution proceedings.[62] This discretion applies to distribution of monthly payments under privately purchased disability insurance policies acquired during the marriage. Distribution of property by the trial court should be disturbed only if there has been a manifest abuse of discretion.[63] The trial court is in the best position to assess the assets and liabilities of the parties and determine what is "fair, just and equitable under all the circumstances."[64]
Under the facts of this case, the trial court did not abuse its discretion in distributing future monthly disability payments to Petitioner Michael A. Brewer under the private disability insurance policies purchased during the marriage with premiums paid from community funds. The community paid $12,000.00 in premiums on the policies and received disability payments totaling $300,000.00 prior to the dissolution.[65] In making distribution to the parties, the trial court properly determined what was fair, just and equitable under all of the circumstances.

SUMMARY AND CONCLUSIONS
The Court of Appeals agreed with the trial court only in its distribution of property in this dissolution, but disagreed with its comments that it felt bound to award future disability payments under the disability insurance policies to Petitioner Michael A. Brewer as his separate property. The Court of Appeals, relying upon Chase v. Chase,[66] concluded that disability insurance payments were community property. But this Court in *111 Marriage of Brown,[67] has moved away from such an absolute conclusion.
Under Brown, monthly payments under a disability insurance policy intended to compensate the insured for future income or pain and suffering should be characterized as separate property. Monthly payments under the policy which compensate for expenses incurred during the marriage, or earnings lost during the marriage or payments which are in fact deferred compensation, should be characterized as community property in proportion to the community's contribution to those expenses or to the deferred compensation plan.
Although under RCW 26.09.080 the trial court in a dissolution proceeding must consider the character and status of property before distribution, the actual characterization of property as community or separate is not essential to the exercise of discretion by the trial court in distributing assets and liabilities. The trial court under the facts of this case, in the exercise of its discretion, could award future disability payments to Petitioner Michael A. Brewer, regardless whether those payments are characterized as community property or separate property. The fact the trial court characterized the disability policies as separate property, even if in error, would not affect the discretionary disposition to Petitioner Michael A. Brewer. The trial court, under Brown, could properly characterize the monthly disability payments after the dissolution as the separate property of Petitioner Michael A. Brewer.
We therefore disagree with the Court of Appeals only in its determination that remand to the trial court was necessary. Any error committed by the trial court in concluding the disability insurance benefits were not assets subject to division was cured by the authority given courts under RCW 26.09.080 to divide both community property and separate property between the parties in a marriage dissolution, keeping in mind the correct character and status of the property and determining what is "fair, just and equitable under all the circumstances."
We conclude instead that the privately purchased disability insurance policies (Mutual of New York and New York Life Insurance Company) for Petitioner Michael A. Brewer acquired during the marriage with premiums paid from community funds retained their character as community property until the dissolution; but after the dissolution monthly payments to Petitioner Michael A. Brewer changed in character to his separate property. The trial court incorrectly concluded the disability insurance benefits were "not assets subject to division in this case."[68]
We agree with the Court of Appeals on its conclusion that property distribution in this case was proper, but disagree only with that portion of its decision which remanded the case to the Clark County Superior Court. In so doing, we affirm the decision of the trial court which awarded to Petitioner Michael A. Brewer as his separate property future monthly disability payments under the private disability insurance policies purchased during his marriage to Respondent Deborah Q. Brewer with premiums paid from community funds during the marriage until the premiums were waived by the companies issuing the policies.
JOHNSON, TALMADGE, SANDERS and IRELAND, JJ., concur.
GUY, C.J. (concurring).
I agree with the majority that the rule enunciated in In re Marriage of Brown, 100 Wash.2d 729, 675 P.2d 1207 (1984), applies to wage-replacement disability insurance benefits. I write separately because (1) I would specifically overrule Chase v. Chase, 74 Wash.2d 253, 444 P.2d 145 (1968), and (2) I would clarify that post-dissolution wage-replacement benefits are not "assets" that are before the trial court in a dissolution proceeding.
Courts and commentators alike have recognized the inconsistency in Washington's case law in this area. See, e.g., In re Marriage of Huteson, 27 Wash.App. 539, 542-43, 619 P.2d 991 (1980) (questioning both the *112 logic and wisdom of Chase, and holding "To treat ... disability payments as a community asset would unfairly and permanently burden those future earnings to the same extent as would an award of permanent alimony."); In re Marriage of Brewer, 89 Wash.App. 425, 430, 949 P.2d 404 (1998) (noting that, in light of criticism and newer case law, the continuing viability of the Chase rule "is questionable");[1] 1 WASHINGTON STATE BAR ASS'N, FAMILY LAW DESKBOOK § 38.3(5), at SU-38-2 (Supp.1996) ("The status of Washington law as to when disability benefits to be paid after entry of a decree constitute `property' subject to distribution by the trial court in a dissolution action is `not all together clear.' In fact, some Washington cases classify disability benefits as property subject to distribution, others classify them as income not subject to distribution, and still others classify disability benefits as part property and part income."); Harry M. Cross, The Community Property Law in Washington (Revised 1985), 61 Wash. L. Rev. 13, 64 (1986) ("the proper treatment of disability insurance or pension payments ... should be reconsidered in light of the decision in Brown"); KENNETH W. WEBER, 20 WASHINGTON PRACTICE, FAMILY & COMMUNITY PROPERTY LAW § 32.17, at 190-91 (1997) ("retirement benefits are generally considered deferred compensation for past services, and ... are considered an asset and divisible as such.... By contrast, disability benefits that are in the nature of compensation for lost future wages (sometimes called future earnings replacement) are generally not an asset for distribution upon dissolution, though contrary results have been reached in a few cases." (footnote omitted).
The authors of the State Bar Association Community Property Deskbook state:
Disability payments normally represent compensation for diminished earning capacity, replacing lost wages. Thus viewed, the payments are not a form of deferred compensation, rather they are a form of current compensation.
The California courts have held that disability payments received during marriage will be considered community property. Payments to be received after dissolution of marriage will be considered separate property.
This result should be reached in Washington under the reasoning of In re Marriage of Brown. ... Earlier cases, however, reached a contrary result.
WASHINGTON STATE BAR ASS'N, COMMUNITY PROPERTY DESKBOOK § 3.24, at 3-31 to 3-32 (2d ed.1989) (citation omitted). See also In re Marriage of Nuss, 65 Wash.App. 334, 343, 828 P.2d 627 (1992) (disability benefits which are in the nature of compensation for lost future wages are not an asset for distribution upon dissolution; by contrast, disability benefits which are in the nature of deferred compensation or retirement pay are community property); In re Marriage of Anglin, 52 Wash.App. 317, 324, 759 P.2d 1224 (1988) (disability benefits characterized as repayment for lost future wages were not a marital asset to be characterized and distributed by the court).
In my view, we should clarify the law by overruling Chase and hold: Disability payments which are in the nature of earnings replacement are treated the same as the earnings of a healthy spouse. Therefore, when the parties are married and not separated, the replacement earnings would be community property; assets purchased with or generated by community funds are assets belonging to the community. RCW 26.16.030. When the parties are separated, their earningswhether a result of wage replacement disability benefits or of personal laborare separate property. RCW 26.16.140. Future, post-dissolution earnings, whether received from employment, business ventures, investment, or disability benefits, are not "assets" which are before the court for disposition in a dissolution action. See Brown, 100 Wash.2d at 738, 675 P.2d 1207; In re Marriage of Hall, 103 Wash.2d 236, 247, 692 P.2d 175 (1984) (future earning capacity is not a marital asset). However, the *113 trial court may consider such earnings when determining what constitutes a fair and equitable distribution of the assets and debts which are before the court. RCW 26.09.080 (economic circumstances of each spouse is a relevant factor in making a property disposition); Hall, 103 Wash.2d at 247, 692 P.2d 175; In re Marriage of Leland, 69 Wash. App. 57, 72, 847 P.2d 518 (1993). The trial court also may consider such earnings when determining the propriety and amount of any maintenance award. RCW 26.09.090.
ALEXANDER, MADSEN and DURHAM, JJ., concur.
NOTES
[1] Clerk's Papers at 243. On May 20, 1988 the parties entered into a prenuptial agreement, listing most of their premarital assets and debts, which was not directly related to the disputed ruling and is not in the record before this Court. Clerk's Paper at 244.
[2] Id. at 250.
[3] Id. at 249.
[4] Id.
[5] Id. Multiple sclerosis is a chronic disease in which there is scattered demyelination of the central nervous system principally characterized by speech defects and loss of muscular coordination. Webster's New World Dictionary, (2nd College ed.1986).
[6] Id.
[7] Id. The record does not include documentation from the Social Security Administration nor copies of the disability insurance policies.
[8] Id. This includes $2,793.00 per month from the NYLIC disability policy, earned by Petitioner during the marriage as a job-related benefit at Kaiser. The two privately purchased MONY disability policies pay $1,000.00 and $2,400.00 per month.
[9] Id.
[10] Id. at 1-5.
[11] Id. at 269-71.
[12] Id. at 243-53.
[13] Id. at 252-53 (emphasis added).
[14] Id. at 246.
[15] Id. at 247.
[16] Id. at 248.
[17] Id. at 250. Respondent receives Social Security payments as a result of her former husband's death which she uses for her children's living expenses. She receives $839.00 per month for her youngest child, and might receive an additional $839.00 for the older child if she successfully appeals the Social Security allocation. Her children also have trust resources to provide for educational and related expenses. Clerk's Papers at 249.
[18] Id. at 247-48.
[19] Id. at 248.
[20] Id. at 250.
[21] Id.
[22] Id. at 245.
[23] Id.
[24] Id.
[25] Id.
[26] Id. at 250-51.
[27] Id.
[28] Id. at 251, 252.
[29] Id. at 251.
[30] Id. Petitioner presented testimony at trial that he cannot reasonably expect to reach the "retirement" age of 65 years because his illness has reduced his life expectancy to 45 years.
[31] In re Marriage of Brewer, 89 Wash.App. 425, 427, 949 P.2d 404 (1998). See also Clerks Papers at 252.
[32] Id. at 430, 949 P.2d 404.
[33] Id. at 431, 949 P.2d 404.
[34] 100 Wash.2d 729, 675 P.2d 1207 (1984).
[35] 103 Wash.2d 236, 692 P.2d 175 (1984).
[36] 27 Wash.App. 539, 619 P.2d 991 (1980).
[37] 52 Wash.App. 317, 759 P.2d 1224 (1988).
[38] 74 Wash.2d 253, 444 P.2d 145 (1968).
[39] Moreman v. Butcher, 126 Wash.2d 36, 39, 891 P.2d 725 (1995).
[40] Brewer, 89 Wash.App. at 426, 949 P.2d 404.
[41] Id. at 430, 949 P.2d 404.
[42] Blood v. Blood, 69 Wash.2d 680, 682, 419 P.2d 1006 (1966).
[43] Id.
[44] Friedlander v. Friedlander, 80 Wash.2d 293, 303, 494 P.2d 208 (1972).
[45] RCW 26.16.030; see also Harry M. Cross, The Community Property Law in Washington (Revised 1985), 61 Wash. L. Rev. 17, 28 (1986).
[46] Cross, supra; see In re Marriage of Brown, 100 Wash.2d 729, 734, 675 P.2d 1207 (1984) (citing Marriage of Parsons, 28 Wash.App. 276, 622 P.2d 415, review denied, 95 Wash.2d 1019 (1981)).
[47] Chase 74 Wash.2d at 257, 444 P.2d 145 ("Favoring, as it does, the existence of community as opposed to separate property, the law will resolve the doubts between them in favor of a community status.").
[48] Id.
[49] Answer to Pet. for Review of Deborah Brewer at 6.
[50] Aetna Life Ins. Co. v. Wadsworth, 102 Wash.2d 652, 659, 689 P.2d 46 (1984) "[T]he character of funds used to pay for the most recent term should determine the character of a term life insurance policy.").
[51] Cross, supra, note 46, at 64-65.
[52] Id.
[53] Brown, 100 Wash.2d at 737, 675 P.2d 1207.
[54] Id. at 738, 675 P.2d 1207.
[55] Id.
[56] Id. 738-39, 675 P.2d 1207.
[57] Cross, supra, note, at 64-65.
[58] Id.
[59] 128 Wash.2d 765, 778, 912 P.2d 463 (1996) ("Despite the general community property presumption under RCW 26.16.030, Washington courts have refused to treat disability income, including disability pensions, as community assets subject to allocation in a dissolution proceeding in the absence of substantial elements of either deferred compensation or retirement. Such payments are for lost future income and are not `earned' as are retirement benefits."). See also In re Marriage of Kollmer, 73 Wash.App. 373, 870 P.2d 978 (1994).
[60] Brown, 100 Wash.2d at 738-39, 675 P.2d 1207.
[61] Supplemental Br. of Pet'r at 5.
[62] In re Marriage of Konzen, 103 Wash.2d 470, 477-78, 693 P.2d 97 (1985) (former RCW 26.09.080 provides "[T]he court shall, without regard to marital misconduct, make such disposition of the property and liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to: (1)[t]he nature and extent of the community property; (2)[t]he nature and extent of the separate property; (3)[t]he duration of the marriage; and (4)[t]he economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live [in it] ... for reasonable periods to a spouse having custody of any children." (emphasis added)).
[63] Konzen 103 Wash.2d at 478, 693 P.2d 97.
[64] In re Marriage of Hadley, 88 Wash.2d 649, 656, 565 P.2d 790 (1977) (`citing Baker v. Baker, 80 Wash.2d 736, 498 P.2d 315 (1972)).
[65] Brewer 89 Wash.App. at 427, 949 P.2d 404. See also Clerk's Papers at 252.
[66] 74 Wash.2d 253, 444 P.2d 145 (1968).
[67] 100 Wash.2d 729, 675 P.2d 1207 (1984),
[68] Clerk's Papers at 252.
[1] Because of the similarity of the facts in this case and those in Chase v. Chase, 74 Wash.2d 253, 444 P.2d 145 (1968), I cannot fault the Court of Appeals for feelingreluctantlybound to follow the rule articulated in Chase.