IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 36605-7-III |
| | ) | |
| SHANNON JONES, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ANTHONY JONES, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Shannon Jones appeals and Anthony Jones cross

appeals various aspects of the trial court's decision in their dissolution action. We agree

with Mr. Jones that the trial court erred when it designated a parcel of property

community property. Mr. Jones's mother gifted an undivided one-half interest in that

parcel to her son before he married and gifted her remaining interest to her son, not the

community, after he married. We affirm all other aspects of the trial court's decision.

FACTS

Shannon Jones and Anthony Jones married in October 1998 and separated in

July 2017. They have three children, two of whom were minors at the time of trial.

During their marriage, the Joneses owned and operated a business that provided assisted living care for disabled persons. The business—Arthur Arms Adult Family Homes and Sunshine Place—was run from two properties, 648 and 652 South Arthur Street.

*Business value*

The business's profits varied from year to year depending on spending. The Joneses' joint tax returns showed net profit of $63,533 in 2013, $51,995 in 2014, $30,124 in 2015, and $83,654 in 2016. The parties did not pay themselves wages or draw salaries. However, they transferred $2,000 per month from the business account to cover their family's basic expenses.

Ms. Jones testified the business was worth $400,000. As a co-owner, she paid some bills and had access to tax documents. To estimate the value of the business, she searched for recently sold homes in Spokane comparable to the properties from which the business was run. She offered her comparable as an exhibit, which Mr. Jones objected to on grounds of hearsay, authentication, and relevancy. On cross-examination, Ms. Jones acknowledged the exhibit did not list the address of the comparable, and the comparable had many features that the business properties did not. The comparable was a piece of

property that could be used as an adult family home, but was not a business for sale. The court did not admit the exhibit into evidence.

Mr. Jones explained the nature of the business, including the work it entails, the licensing, and its employees. He testified that neither the business license nor its clients can be sold. He explained that he laid off the business's employees and did all of the work himself when the business did not generate enough income. He testified, despite the tax returns that showed a profit, there was little money left in the business account after expenses were paid.

The trial court found that the business's value was not proved at trial but said that did not impact its allocation of assets and debts. The business was primarily an "income-generating mechanism for the community." Report of Proceedings (RP) at 405. The court explained:

> This business is unique in that it's not really sellable. Again, these are homes that are specially licensed for mental health residential treatment essentially and these are not easily transferable or sellable types of business [sic] as they are tied to the real estate. They're also subject to extensive regulations which this Court is very well aware of and it would not be easy to expand the operations or profit-making ability of these businesses beyond what they have been producing for the last several years.
> . . . What it really boils down to is this was a business that produced an income for the couple that in good years was around $65,000 . . . . I don't think it would be in the position to produce much more than that unless there were major changes to Medicaid or Medicare pricing or deregulation allowing for additional beds.

3

> . . . .
>    . . . I'm indicating that the Court really didn't hear compelling
> testimony to determine the value of the business. I think the Court
> considered the unique aspects of this business. . . .

RP at 406-07.

When the attorneys asked for clarification, the court answered, "[T]he value was never proven outside establishing the value for the real estate. There was no evidence other than that . . . the business was capable of producing at most $65,000 in income per year and had a historic record of producing less than that for several years." RP at 423.

### *648 S. Arthur*

648 S. Arthur has been in Mr. Jones's family for generations. Mr. Jones's mother, Alice Doss, owned and operated Sunshine Place from it. Before the Joneses married, Ms. Doss added her son to the title and the two operated Sunshine Place together. In 1999, Ms. Doss retired and her son took over the business. In 2012, Ms. Doss and her son removed Ms. Doss from title by quitclaiming their interest to Mr. Jones. Specifically, the deed recites that the grantors are "Alice Doss and Anthony Jones" and the grantee is "Anthony Jones." Ex. 11, at 3.

At trial, Ms. Jones asserted that 648 S. Arthur was community property. She acknowledged it had previously belonged to Ms. Doss's mother and then Ms. Doss. She also acknowledged that the tax records classified the property as a gift to Mr. Jones.

When asked why she believed the property was gifted to Mr. Jones *and her*, despite the language in the deed and in the tax records, she answered that Ms. Doss gifted the property to both of them so they could use it as collateral to buy 652 S. Arthur.

The trial court found that 648 S. Arthur was community property. It explained:

> [W]hen there's a question the Court starts with a presumption of community property and the law is very clear that title is not necessarily indicative of separate or community property and there really was no evidence to overcome the presumption, other than the evidence that was submitted with respect to the title and the circumstances of gifting that. But I did not find in applying the preponderance of the evidence standard that that presumption was overcome. So I think the proper characterization of all property, real property, is that of community property.

RP at 395-96.[1] The court added that it "would have made the same distribution award determinations regardless of the character and regardless of stated value as the Court believes that the distributions ordered to be fair, just, and equitable." RP at 396.

*Maintenance and child support*

One year before trial, Ms. Jones requested temporary monthly maintenance of $2,400. She asked for that amount in part because Mr. Jones was receiving all of the business income, and she was working to establish a career for herself outside of that business. At that time, Ms. Jones's stated monthly expenses were $3,595 and her monthly

---

[1] The court references the 643 address, but this appears to be an error because that property's classification was not contested.

5

income was $1,252.  The trial court found that Mr. Jones's monthly income was around

$8,500 per month, but acknowledged complications of self-employment.  The court

ordered monthly temporary maintenance of $2,000.  It then considered this monthly

maintenance when calculating child support.

After trial, the court ordered that spousal maintenance remain at $2,000 per month

for 24 months until December 2020.  In so ordering, it explained:

> The Court was mindful in awarding maintenance . . . .  This was a 19-year
> marriage, so a significant length of marriage, and the Court looked at all the
> factors as it's required to do in RCW 26.09.090, but those are not exclusive,
> those are a nonexclusive list.  The Court also in making a maintenance
> determination there was some accounting for the community business asset
> going to Mr. Jones and she's not going to have the benefit of that
> community business.
>
> . . . [T]he Court's paramount consideration was need but other
> factors including the business was [sic] considered.  In looking at the
> statutory factors, the Court also considered the ability to pay, the ages of the
> parties, their future income projections, the standard of living during the
> marriage, the relative health and ages of the parties, the distribution
> decision this Court made related to the assets and debts, Ms. Jones' ability
> to meet her own needs, the Court's award of child support, and the Court
> considered the appropriate duration for maintenance payments under the
> facts of this case. . . .
>
> In taking into issues of equity, I think maintenance should be limited
> in this case, so I'm ordering maintenance for 24 months. . . .

RP at 411-13.

The trial court ordered a shared parenting plan so the two youngest children would

spend equal time at each parent's home.  The court ordered Mr. Jones to pay child support

6

based on a standard calculation, which is premised on the primary residential parent having the children a majority of the time. The standard calculation required Mr. Jones to pay $1,205 per month until July 2019, at which time the middle child turned 18, and then $767 per month until the youngest child turned 18.

### *Net community property award*

In the trial court's oral ruling, it valued personal property, but neglected to value the three parcels, including 648 S. Arthur, which it awarded to Mr. Jones. Nevertheless, the parties filed a joint report before trial and were in near agreement as to the value of the three parcels. Using Ms. Jones's net values for the three parcels[2] and the trial court's net values for the personal property, the total community property award was $128,346 for Ms. Jones and $323,869 for Mr. Jones. The court denied Ms. Jones's request for an equalization payment.

### *Reconsideration*

Ms. Jones filed a motion for reconsideration. Among other things, she asked the trial court to reconsider its finding that there was no proof of the business's value. With respect to this, the trial court explained that the business's value was equal to the

---

[2] 643 S. Arthur ($75,761); 648 S. Arthur ($225,000); and 652 S. Arthur ($68,003).

properties it ran out of. We construe this to mean that the business had no independent value.

## ANALYSIS

On appeal, Ms. Jones argues the trial court erred by finding there was insufficient evidence of the business's value and by denying her request for an equalization payment. On cross appeal, Mr. Jones argues the trial court erred by designating 648 S. Arthur as community property, granting spousal maintenance above Ms. Jones's needs, and declining to deviate from the standard child support calculation. We first address the property issues and then the maintenance and child support issues.

A.    PROPERTY ISSUES

1.    BUSINESS VALUATION

Ms. Jones contends the trial court erred by finding there was insufficient evidence of the business's value. As mentioned above, we construe the trial court's explanation in its reconsideration ruling as meaning the business had no independent value. Construed in this manner, substantial evidence supports this finding.

We generally do not disturb the trial court's valuations so long as they are within the scope of the evidence presented. *In re Marriage of Mathews*, 70 Wn. App. 116, 122, 853 P.2d 462 (1993). "This court will not substitute its judgment for that of the trial court

on a disputed factual issue," including property valuation. *Worthington v. Worthington*, 73 Wn.2d 759, 762, 440 P.2d 478 (1968). "An owner may testify as to the value of his property and the weight to be given to it is left to the trier of fact." *Id.* at 763. It is well settled that the trial court weighs evidence and makes credibility determinations. *In re Marriage of Rideout*, 150 Wn.2d 337, 350-52, 77 P.3d 1174 (2003).

Fair market value is defined as what a willing buyer, not required to buy, would pay a willing seller, not required to sell. *State v. Rowley*, 74 Wn.2d 328, 334, 444 P.2d 695 (1968). Neither party submitted a professional valuation of fair market value at trial. Ms. Jones's evidence focused on the value of a property, not a business, that she believed was comparable. Mr. Jones's evidence focused on the impracticability of selling the business apart from its location. In addition, he presented evidence that the business generated no net income above what one would have to pay for the labor to run it. The trial court agreed with Mr. Jones and found that the business had no independent value. Substantial evidence supports this finding.

2. 648 S. ARTHUR

Mr. Jones contends the trial court erred by finding that 648 S. Arthur was community property. We agree.

9

The characterization of marital property is a mixed question of law and fact. *In re Marriage of Schwarz*, 192 Wn. App. 180, 191-92, 368 P.3d 173 (2016). The time and method of acquisition and intent of the donor are questions of fact, and "whether or not a rebuttable presumption of community or separate character is overcome is a question of fact." *Id.* at 192. We review factual findings for substantial evidence. *Id.* The ultimate classification of property as separate or community is a matter of law, reviewed de novo. *In re Marriage of Martin*, 32 Wn. App. 92, 94, 645 P.2d 1148 (1982); *In re Marriage of Chumbley*, 150 Wn.2d 1, 5, 74 P.3d 129 (2003).

<u>The first transferred interest</u>

The status of property is determined as of the date of its acquisition. *In re Marriage of Kile*, 186 Wn. App. 864, 875, 347 P.3d 894 (2015). Property acquired prior to marriage is separate property. RCW 26.16.010. Here, Ms. Doss gifted an undivided one-half interest in 648 S. Arthur to her son before he married. This interest, therefore, is Mr. Jones's separate property. The trial court erred by presuming that this interest was community property.

<u>The second transferred interest</u>

Property acquired during marriage is presumed to be community property, regardless of how title is held. *Dean v. Lehman*, 143 Wn.2d 12, 19, 18 P.3d 523 (2001).

"The burden of rebutting this presumption is on the party challenging the asset's community property status, and 'can be overcome only by clear and convincing proof that the transaction falls within the scope of a separate property exception.'" *Id.* at 19-20 (citations omitted) (quoting *Estate of Madsen v. Comm'r of Internal Revenue*, 97 Wn.2d 792, 796, 650 P.2d 196 (1982), *overruled in part on other grounds by Aetna Life Ins. v. Wadsworth*, 102 Wn.2d 652, 659-60, 689 P.2d 46 (1984)).

RCW 26.16.010 sets forth separate property exceptions. That statute provides that property gifted to one spouse during marriage is separate property. Therefore, if Mr. Jones can establish by clear and convincing evidence that he received his mother's remaining interest in 648 S. Arthur by gift, that interest is his separate property.

Here, the undisputed evidence is that Ms. Doss gifted her remaining interest in 648 S. Arthur. Neither party asserts that consideration was given to Ms. Doss. The only question is whether the gift was to Mr. Jones, or to both Mr. Jones and Ms. Jones.

Both the quitclaim deed and the excise tax affidavit evidence that Ms. Doss gifted her remaining interest in the property to her son, not the community. But Ms. Jones, citing *In re Estate of Borghi*, 167 Wn.2d 480, 219 P.3d 932 (2009), argues that the name on the deed or title does not determine the character of the property or even provide much

11

evidence of the character of the property. For the reasons we explain below, she reads *Borghi* too broadly.

<u>*Estate of Borghi*</u>

In 1966, the woman later known as Jeanette Borghi began purchasing property on a real estate contract. *Id.* at 482. On March 29, 1975, Jeanette and Robert Borghi married. *Id.* Three and one-half months later, the contract seller issued a fulfillment deed in the names of "'Robert G. & Jeanette L. Borghi, husband and wife.'" *Id.* Ms. Borghi later died intestate and litigation ensued as to what rights, if any, Ms. Borghi's son by a previous marriage had to the property. *Id.* at 482-83.

The court first recognized that because Ms. Borghi acquired the property before she married, it was presumed separate. *Id.* at 484. It then discussed the joint title gift presumption. That rule presumes that a spouse quitclaiming separate property to the spousal community intends to gift the property to the community. In rejecting the joint title gift presumption, the court explained:

> [E]ven when a spouse's name is included on a deed or title at the direction of the separate property owner spouse, this does not evidence an intent to transmute separate property into community property but merely an intent to put both spouses' names on the deed or title. There are many reasons it may make good business sense for spouses to create joint title that have nothing to do with any intent to create community property. Allowing a presumption to arise from a change in the form of title inappropriately shifts attention away from the relevant question of whether a gift of separate

> property to the community is intended and asks instead the irrelevant
> question of whether there was an intent to make a conveyance into joint
> title.

*Id.* at 489 (citations omitted).  Ultimately, the court determined that the fulfillment deed, issued by the contract seller three and one-half months after marriage, provided insufficient evidence to overcome the presumption that the property was Ms. Borghi's separate property.  *Id.* at 491.

The facts here are distinguishable from *Borghi*.  There, the question was whether Ms. Borghi intended to make a gift to the community, when the only evidence was a fulfillment deed issued by the contract seller in her and her husband's name soon after marriage.  Here, the parties do not dispute that Ms. Doss intended to gift her remaining interest in 648 S. Arthur.  This uncontested fact, therefore, has been established by clear and convincing evidence.

The question presented here is *to whom* the grantor intended to gift her property.  This question was not presented in *Borghi*.  In this regard, the language of the conveyance has great significance.  The conveyance recites that the grantors are Ms. Doss and Mr. Jones, and the grantee is Mr. Jones.

Again, we distinguish *Borghi*.  There, the only evidence of Ms. Borghi's intent to create community property was what *the contract seller* did.  This evidence had little, if

13

any, weight.  Whereas here, the evidence of Ms. Doss's intent to gift property to her son were documents that *she herself* signed.  These documents show that Ms. Doss's intent was to gift her remaining interest in the property to Mr. Jones.

The only contrary "evidence" of Ms. Doss's intent comes from Ms. Jones's testimony.  She testified that Ms. Doss gifted her interest in the property so the community could purchase 652 S. Arthur.  First, we note the trial court did not give any weight to Ms. Jones's testimony about her mother-in-law's intent.  Second, Ms. Jones's testimony makes no sense.  Any property, separate or community, can serve as collateral for a community loan.  For instance here, there is no evidence that Mr. Jones conveyed 648 S. Arthur to the community for the community to qualify for the 652 S. Arthur loan.

We conclude there is clear and convincing evidence that Ms. Doss gifted her remaining one-half undivided interest in 648 S. Arthur and that she gifted it to Mr. Jones. The trial court erred in characterizing this property as community.

### 3.    EQUALIZATION PAYMENT

Ms. Jones contends the trial court erred by denying an equalization payment.  She further argues the court erred by denying her motion to reconsider.  We disagree.

RCW 26.09.080 directs the court to consider several factors when distributing property, including (1) the nature and extent of the community property, (2) the nature

14

and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of the parties at the time of the property division. The distribution need not be equal, but it must be fair, just, and equitable. *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977). "Fairness is attained by considering all circumstances of the marriage and by exercising discretion, not by utilizing inflexible rules." *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989). The trial court has considerable discretion in determining what is just and equitable. *In re Marriage of Doneen*, 197 Wn. App. 941, 949, 391 P.3d 594 (2017). Because the trial court is in the best position to determine what is fair in each case, we reverse only if there has been a manifest abuse of discretion. *Id.*; *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999); *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A manifest abuse of discretion is a decision made on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

After correctly characterizing 648 S. Arthur as Mr. Jones's separate property, the net community property award is $128,346 for Ms. Jones and $98,869 for Mr. Jones. Because Ms. Jones received a greater portion of the parties' net community property, she has no basis to request an equalization payment.

B.      SPOUSAL MAINTENANCE

Mr. Jones contends the trial court erred in granting Ms. Jones's request for spousal maintenance after trial. He argues that her income with spousal maintenance is much higher now than when the temporary award was granted, and he is unfairly left to shoulder the community debt. Even if true, these are insufficient reasons for us to reverse the trial court's maintenance order.

The trial court has discretion in awarding maintenance. *In re Marriage of Zahm*, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). A trial court abuses this discretion when it does not base its award on a fair consideration of the statutory factors in RCW 26.09.090. *Id.*; *In re Marriage of Nicholson*, 17 Wn. App. 110, 115-16, 561 P.2d 1116 (1977). Those factors include (a) the financial resources of the maintenance-seeking spouse, including the property awarded and the ability to meet his or her needs, (b) the time needed to acquire sufficient education or training to find suitable employment, (c) the standard of living established during the marriage, (d) the duration of the marriage, (e) the age, physical and emotional condition of the maintenance-seeking spouse, and (f) the ability of the maintenance-providing spouse to meet his or her financial obligations while paying maintenance. RCW 26.09.090.

The court considered and explained the statutory factors in awarding maintenance. In awarding $2,000 monthly maintenance, the court considered the parties' needs and factored in Ms. Jones's loss of the community business assets. In addition, even though Ms. Jones has $30,000 more net community assets than Mr. Jones, Mr. Jones has a significant separate asset, 648 S. Arthur, valued at $225,000. We conclude that the court did not abuse its discretion in awarding Ms. Jones monthly maintenance of $2,000 for two years.

C.     CHILD SUPPORT DEVIATION

Mr. Jones contends the trial court erred by not granting a deviation in his child support payments, given the shared parenting plan and the parties' roughly equal financial status after incorporating maintenance. We disagree.

We review child support orders for abuse of discretion. *In re Marriage of Fiorito*, 112 Wn. App. 657, 663, 50 P.3d 298 (2002). We reverse only if the trial court's decision was manifestly unreasonable or based on untenable grounds or reasons. *Junker*, 79 Wn.2d at 26. A decision is manifestly unreasonable if it falls outside the range of acceptable choices, it is based on untenable grounds if the factual findings are unsupported by the record, and "it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."

17

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).  Because the

amount of child support rests in the discretion of the trial court, we will not substitute our

own judgment so long as the trial court considered all of the factors and its decision was

reasonable under the circumstances.  *Fiorito*, 112 Wn. App. at 664.  We presume the trial

court considered all the evidence before fashioning the child support order.  *In re*

*Parentage of Goude*, 152 Wn. App. 784, 791, 219 P.3d 717 (2009).  The party

challenging the child support order bears the burden of demonstrating an abuse of

discretion.  *In re Marriage of Schumacher*, 100 Wn. App. 208, 211, 997 P.2d 399 (2000).

Chapter 26.19 RCW establishes a standardized schedule for child support based

primarily on each parent's share of the total net income.  RCW 26.19.071, .080.  The

statute was designed to ensure child support orders adequately meet a child's basic needs

and provide additional support commensurate with the parents' income, resources, and

standard of living.  RCW 26.19.001.  The court retains discretion to deviate from the

amounts outlined in the statutory scheme for a nonexclusive list of reasons provided by

RCW 26.19.075.  Under the statute, the court may deviate from the standard calculation if

the child spends a significant amount of time with the parent paying support, but may not

deviate on that basis if the result would be insufficient funds in the household receiving

support.  RCW 26.19.075(1)(d).

The court entered a shared parenting plan between the parties, where the children were to spend equal time at each parent's home. The court also equalized the parties' incomes by its maintenance award. Mr. Jones argues the court should have deviated the child support order under these circumstances. We see no abuse of discretion.

While the trial court had the discretion to deviate, it was not required to do so. The court considered the parties' financial situations and the needs of the children, and explained its allocation of resources in its ruling and again in its order on reconsideration. We conclude the trial court did not abuse its discretion in denying Mr. Jones's request for a deviation in child support.

D.     ATTORNEY FEES

Ms. Jones requests this court to award her reasonable attorney fees on appeal. We decline.

An appellate court has the discretion to grant attorney fees under RCW 26.09.140. We consider the parties' relative ability to pay and the merit of the issues on appeal when granting a request for fees. *Muhammad*, 153 Wn.2d at 807.

Where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees, the party requesting attorney fees must serve and file a financial affidavit no later than 10 days before the date the case is set for

No. 36605-7-III
*In Marriage of Jones*

consideration on the merits. RAP 18.1(c). Ms. Jones did not comply with this rule. For this and perhaps other reasons, we deny her request.[3]

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____     _____
Siddoway, A.C.J.                     Fearing, J.

_____

[3] This panel considered the merits of this case on December 9, 2020. On January 8, 2021, Ms. Jones filed a motion seeking permission to file a late declaration. By that time, this opinion had been written and approved by the panel. We deny her motion partly because we see little merit in her fee request. The trial court's decision left the parties in roughly equal financial positions and neither party substantially prevailed.

20