IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
                         )
PAUL G. SILVI, )
                         )
            Respondent, )
                         )
            and )
                         )
CAROL L. SILVI, )
                         )
            Appellant. )
_____ )

No. 75166-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 13, 2017

BECKER, J. — Carol Silvi appeals the division of property ordered by the court in her dissolution. Finding no abuse of discretion, we affirm.

According to findings of fact and conclusions of law entered by the trial court, Paul and Carol Silvi were married in Michigan in September 1987. Paul moved to Seattle in late 1993 to work as a sports reporter, and Carol followed soon after. Per the parties' agreement, Carol did not seek employment after they moved to Seattle. The couple had three children.

Paul eventually became the sports anchor at a Seattle television station. He received regular salary increases and was the primary earner in the family. Carol has been a part-time fitness instructor since 2009.

The parties separated in September 2013, and Paul initiated this divorce action in June 2014.

Trial occurred over about five days in September and October 2015. Both Paul and Carol testified.

By the time the decree of dissolution was entered, the Silvis' three children were all over 18. The oldest child had already finished college, and the younger two were living away at college.

On March 15, 2016, the trial court entered findings of fact, conclusions of law, and a decree of dissolution. Carol appeals.

Retirement plan distribution

On March 3, 2016, the court sent draft findings of fact and conclusions of law to the parties. In the draft was a finding that it would be fair and equitable to award "more assets" to Carol. To accomplish this, $300,000 of Paul's 401(k) retirement account would be awarded to Carol. The court invited the parties to provide any objections or clarifications to the court via memorandum.

Paul filed a memorandum requesting reductions to Carol's award, including a request that she receive only $155,000 from the retirement account. He argued that the division of community assets as proposed in the draft was neither fair nor equitable because the maintenance he was ordered to pay Carol would allow her to pay all of her reasonable living expenses and purchase a home, while leaving him unable to pay his living expenses, replace his car, or purchase a home. He also argued that the allocation of assets did not consider the relative financial situations of the parties after paying their current and future debts imposed by the court, including his obligation to incur and pay future loans for the college expenses for the children.

The court's final findings of fact and conclusions of law, entered March 15, 2016, remained largely the same as the draft, except that Carol was awarded $200,000 from Paul's retirement account instead of $300,000.

Carol assigns error to the court's decision that she was entitled to only $200,000 from the account. She first argues that the court "reconsidered" its initial decision regarding the retirement account in violation of CR 59, without any newly discovered or newly admitted evidence and without calling for a response. There was no procedural irregularity. CR 59 does not control the procedure when a court calls for comments on a draft as a preliminary step to issuing a final decree.

Carol centers her argument on the principle that a trial court's ultimate conclusion of law must be supported by its findings of fact. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007), review denied, 163 Wn.2d 1055 (2008). She contends that with an award of only $200,000 from Paul's retirement account, her share of the community assets is roughly equal to Paul's. In her view, the finding that the assets must be weighted in her favor to achieve a fair and equitable distribution was defeated when the court reduced her share of the retirement account to $200,000.

In a dissolution action, the trial court must order a "just and equitable" distribution of the parties' liabilities as well as their property. RCW 26.09.080. When fashioning just and equitable relief, the court must consider all relevant factors, including but not limited to: (1) the nature and extent of the community property, (2) the nature and extent of separate property, (3) the duration of the

3

marriage, and (4) the economic circumstances of each spouse at the time the property distribution is to become effective. RCW 26.09.080.

The court has "broad discretion" to determine what is just and equitable based on the circumstances of each case. Rockwell, 141 Wn. App. at 242. A trial court is in the best position to decide issues of fairness. In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). Accordingly, a property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion. In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). Trial court decisions in dissolution proceedings will seldom be changed on appeal. In re Marriage of Stenshoel, 72 Wn. App. 800, 803, 866 P.2d 635 (1993).

Carol's calculation of relative shares is based on the chart attached as an exhibit to the findings of fact and conclusions of law. The chart assigns to Paul the responsibility of paying off the loans already incurred to pay college expenses for the children, loans that amounted to at least $72,000 at the time of trial. The chart does not reflect the court's finding that Paul was responsible for paying current obligations of $90,000 on those loans and that he was also responsible for future obligations. At different points in the litigation, Paul estimated that when the two younger children finished college, his total obligation on the Parent Plus loans would be either $125,000 or $150,000. That estimate is consistent with the numbers for the loans that Paul had already incurred.

The postdissolution economic position of each party is of paramount concern in dividing the property of the spouses. In re Marriage of Williams, 84

4

Wn. App. 263, 927 P.2d 679 (1996), review denied, 131 Wn.2d 1025 (1997); In re Marriage of Urbana, 147 Wn. App. 1, 195 P.3d 959 (2008). It was appropriate for the court to take into account the argument Paul made regarding the effect the future college loans would have on his economic position.

The trial court must order a "just and equitable" distribution of the parties' property *and liabilities.* RCW 26.09.080. If the future college loan obligations are taken into account, the distribution carries out the finding that the community property should be distributed unequally, in favor of Carol.

Carol does not refute Paul's calculation of how the burden of being responsible for future liabilities, in particular the college loans, will affect his postdissolution economic position. She argues that when the court found that a fair distribution would award "more assets" to her, the choice of the word "assets" was purposeful and the finding therefore compelled the court to award her a greater share of the "assets."

Carol's argument puts too much weight on a single word. The court was aware of its statutory responsibility to distribute both assets and liabilities. RCW 26.09.080. Carol's concern that the reduction to $200,000 had the unintended result of making the distribution roughly equal was brought before the trial court by Carol's motion for reconsideration, and the court did not agree. Because a trial court is in the best position to decide issues of fairness, we do not find an abuse of discretion in the court's final decision to award Carol $200,000 rather than $300,000 from the retirement account. Paul's future obligations for the

college loans provided a tenable basis for a calculation that the ultimate distribution was weighted in Carol's favor as the court intended.

## Valuation of the business

The trial court found that Paul's business, Silvi Sports Inc., had no net value:

> **Mr. Silvi's Interest in Silvi Sports, Inc.** Many years ago Mr. Silvi developed a portable soccer net that he hoped would make him a substantial fortune. However, it has not been a success. The rights to distribute the product are now owned by a Washington corporation he formed called Silvi Sports, Inc., in which Mr. Silvi contributed $500 and his concept (his patent for the product expired a long time ago) in return for what is now a 41% interest in the company. In 2013, the most recent year Silvi Sports filed a tax return, it reported gross sales of $22,270, cost of goods sold of $18,146 and other expenses of $21,541, for an operating loss of $17,417. Exh. 132.
> . . . The company's only asset is its inventory, consisting of approximately 50 poorly constructed nets, and an undetermined number (substantially fewer than 350) that were better produced. The only credible evidence indicates that the cost of operating Silvi Sports, Inc. each year is and will continue to be the same or more than the sales it generates. The Court therefore finds the company has no net value, and awards to Mr. Silvi his 41% interest in it.

Consistent with the above finding, the chart of assets listed the value of Silvi Sports Inc. as $0. Carol unsuccessfully moved the trial court to reconsider the $0 valuation, and she assigns error to it on appeal.

A trial court must set forth on the record the factors and methods that were used in reaching a finding as to the value of a business. In re Marriage of Hall, 103 Wn.2d 236, 247, 692 P.2d 175 (1984). Carol contends that the trial court did not set out any factors or describe what method it used to value Silvi Sports Inc. and valued the business at zero only because it had a negative cash flow.

6

In the finding quoted above, the trial court explained that the $0 valuation was based on the company's scant inventory and evidence that the business operates, and will continue to operate, at a loss. The finding adequately sets forth the factors and methods the court used in valuing the business.

Carol specifically contends that the trial court's valuation of Silvi Sports Inc. failed to account for its goodwill value. In her pretrial brief, Carol included a proposed division of assets and debts. On this chart, she listed "Paul Silvi's goodwill & name" with a value of "intangible." Separately, she listed Silvi Sports Inc. with a value of $150,000. During trial, she asked Paul on cross-examination whether he had determined the value of his goodwill as it related to Silvi Sports Inc. Paul said he had not, but agreed he had some name value related to the product because of his job as a sports anchor. In closing, Carol argued that Paul should be ordered to hire an expert to set a goodwill value.

Neither party presented expert testimony or any other evidence from which the court might have been able to ascertain the amount of the company's goodwill value. In valuing Silvi Sports Inc. at $0, the court implicitly found that the business had no goodwill value. Because no evidence of goodwill value was presented to the court, it was not necessary for the court to state its finding regarding goodwill value any more specifically, and court cannot be faulted for failing to assign goodwill value to the business. The court's valuation of Silvi Sports Inc. was within the scope of the evidence and will not be disturbed. See In re Marriage of Soriano, 31 Wn. App. 432, 435, 643 P.2d 450 (1982).

No. 75166-2-I/8

Affirmed.

WE CONCUR:

_____

_____

Becker, J.

_____

Appelwick, J.

8