IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 77065-9-I |
| | ) | |
| COURTNEY MOORE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| THOMAS MOORE, | ) | |
| | ) | FILED: March 4, 2019 |
| Appellant. | ) | |

VERELLEN, J. — In the dissolution of Thomas and Courtney Moore's[1] marriage, the trial court entered a parenting plan that restricted Thomas's decision making based on a finding of domestic violence. Thomas appeals the parenting plan, arguing that the trial court erred by limiting his decision making and ordering a residential schedule in which the child resides primarily with Courtney. But our review is precluded by various procedural deficiencies, including Thomas's failure to provide an adequate record on appeal. In addition, he disregards our standard of review, arguing that the trial court should have deferred to his evidence. Even if we could ignore these critical deficiencies, his underlying premise that the court

---

[1] We use the first names of the parties for ease of reference. We refer to their son as "T.J."

premise that the court could not restrict his decision making or favor Courtney with greater residential placement fails under the abuse of discretion standard of review. We affirm.

## FACTS

Courtney Moore and Thomas Moore married in 2005. They had two children, Maria and T.J. Maria was diagnosed with leukemia in September, 2014, and was hospitalized on and off over the next year. In July 2015, Courtney filed a petition for dissolution. Before her petition, the parents spent a roughly even amount of time at the hospital with Maria. After, Courtney spent less time there, finding that Thomas created a hostile, uncomfortable environment. In order to spend more time with Maria, Courtney obtained a protection order restraining Thomas from visiting Maria for a two-and-a-half hour period each day. Ten days later, the parties agreed to terminate the protection order. Tragically, Maria passed away in November, 2015.

With her petition for dissolution, Courtney proposed a residential schedule in which Thomas had visits every other weekend. Thomas proposed a residential schedule in which Courtney had visits every other Saturday, and every Tuesday and Thursday evening. Pending the outcome of the proceedings, the parents split residential time, with four nights each week with Thomas and three nights each week with Courtney.

The parties presented evidence in a trial lasting at least six days.

Courtney described domestic abuse during the marriage. She testified that "he spit on me," "he flipped the mattress over that I was laying on," and he was "punching doors and punching walls."[2] Once, in 2008, "he [was] trying to keep the keys from me and not allowing me to leave the house, and when I tried to get the keys back, he went for the door and we both [went] down the stairs."[3]

The appointed guardian ad litem (GAL) also testified that "[t]here are behaviors that I believe Mr. Moore engaged in such as . . . punching in doors and pulling down curtains and things[,] property damage . . . that cause . . . the fear of bodily harm or injury."[4] The GAL was concerned "that the father's attitude and actions regarding the mother impact the child and interfere with him having a positive concept of his mother, and therefore having a positive, healthy relationship with his mother."[5]

Regarding these domestic violence incidents, Thomas testified that "there was never any tumble down the stairs."[6] Rather, "I started to go down the stairs to leave, and she jumped on my back, dug her nails in me and was screaming in my ears."[7] With respect to an incident where the police were called because Thomas allegedly kicked in the door to the garage, Thomas testified that Courtney locked

---

[2] Report of Proceedings (RP) (Feb. 2, 2017) at 230, 235.

[3] Id. at 238-39.

[4] RP (Jan. 31. 2017) at 37.

[5] Id. at 104.

[6] RP (Feb. 3, 2017) at 260.

[7] Id.

him out of the house with the children in the car, so he "kind of pushed and the door opened. I went in and got the things that I wanted to get."[8]

The trial court entered a final divorce order, parenting plan, and child support order in June 2017. The parenting plan found a domestic violence limitation as to Thomas and substance abuse limitations as to both Thomas and Courtney. But because of the unique circumstances related to Maria's passing, the court did not limit Thomas's time with T.J. Instead, the parenting plan provides that T.J. primarily lives with Courtney except for every other weekend and every other Wednesday with Thomas. The court assigned sole decision making authority to Courtney.

The trial court found that in spite of a substance abuse finding, "[n]o evidence was presented that . . . between 2008 to present there is a correlation between the mother's parenting and either her mental health or substance use."[9] Thus, the trial court declined to limit Courtney's residential time.

With respect to Thomas's domestic violence, it found that

[t]he father has never hit or threatened to hit the mother directly. However, the father's actions and behaviors meet both the legal definition of domestic violence and the social definition. The father's arrest in November 2008 and instances of property damage did place the mother in reasonable fear. The father also engaged in a pattern of financial control, surveillance of the mother, and isolation of the family and mother.[10]

---

[8] Id. at 265.

[9] CP at 530 (finding of fact 24).

[10] CP at 529 (finding of fact 15).

4

The trial court further found that Thomas's testimony was not credible in a number of respects, including his descriptions of Courtney's mental illness and his claim that Courtney was frequently drunk or under the influence around the children. The trial court also found that Thomas's description of the incident in which he broke down the garage door "does not appear reasonable or likely."[11]

Thomas is self-represented in his appeal. Courtney is also self-represented but elected not to file a responsive brief.

DISCUSSION

We review parenting plan decisions for manifest abuse of discretion.[12] A trial court abuses its discretion only if its "'decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'"[13]

"We treat the trial court's findings of fact as verities on appeal so long as they are supported by substantial evidence."[14] Evidence is substantial when it is sufficient to "'persuade a fair-minded person of the truth of the matter asserted.'"[15] "So long as substantial evidence supports the finding, it does not matter that other evidence may contradict it."[16] This court does not review the trial court's credibility

---

[11] CP at 528 (finding of fact 2).

[12] In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017).

[13] Id. (quoting In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)).

[14] Id.

[15] Id.

[16] In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

determinations or weigh conflicting evidence.[17] Unchallenged findings are verities on appeal.[18]

The law does not distinguish between litigants who choose to proceed pro se and those who seek assistance of counsel.[19] Both must comply with applicable procedural rules.[20] We generally will "not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis."[21] Further, the party presenting an issue for review has the burden of providing an adequate record to establish the asserted error.[22] The failure to provide such a record may preclude our review.[23]

Thomas fails to comply with most of these requirements. His brief has few citations to authority, limited citation to the record, and little, if any, meaningful analysis. He does not assign error to any factual findings relevant to his argument. In addition, he arranged for only a partial verbatim report of

---

[17] Black, 188 Wn.2d at 127.

[18] In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999).

[19] In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting Marriage of Wherley, 34 Wn. App. 344, 349, 661 P.2d 155 (1983)).

[20] Id.

[21] Cook v. Brateng, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010) (citing Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990); State v. Camarillo, 54 Wn. App. 821, 829, 776 P.2d 176 (1989), aff'd, 115 Wn.2d 60 (1990); RAP 10.3(a)).

[22] RAP 9.2(b); State v. Sisouvanh, 175 Wn.2d 607, 619, 290 P.3d 942 (2012).

[23] Id.

proceedings of the trial and failed to designate key exhibits such as the GAL's report to be included in the record.[24] These deficiencies preclude our ability to fairly and fully apply the standard of review. Because Thomas fails to meet his burden on appeal, we must affirm.

Even if we were able to somehow ignore these critical deficiencies, the basic premise of Thomas's appeal fails. Thomas contends that "[t]he court failed to take a balanced approach to weighing the conflicting testimony about the father's demeanor and care for the children" and that the "[t]rial court findings deemphasized all of [his] concerns about [Courtney's] dependency problems and mental health."[25] He points to the testimony of witness Dr. Christen Carson, who was critical of the GAL investigation, and argues that the GAL report is biased and incomplete.

These arguments reflect a misunderstanding of the role of an appellate court. We do not reweigh the evidence as the weight and credibility of evidence are issues within the sole discretion of the trial court.[26] The trial in this case involved conflicting testimony of the parents, the GAL, and Dr. Carson. Determining the credibility of the witnesses and the weight to assign to conflicting

---

[24] In addition, Thomas designated for transcription only his own attorney's cross-examination of the GAL. The record does not contain the GAL report or any of the GAL's testimony on direct examination. He provides only selected portions of Courtney's testimony.

[25] Appellant's Br. at 19, 28.

[26] In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

testimony is for the trial judge, whose findings we review only to determine whether they are supported by substantial evidence.

Even if we overlooked this misunderstanding of our standard of review, Thomas's core arguments fail. Thomas argues that "[t]he trial court failed to consider the best interest of the child" and "err[ed] in ordering a [p]arenting [p]lan that removes the father's ability to make decisions regarding parenting of the child."[27] The trial court is authorized to limit a parent's decision making and residential schedule "if it is found that a parent has . . . a history of acts of domestic violence."[28] The definition of "domestic violence" includes "the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members."[29]

The trial court limited Thomas's decision making because it found that he "has a history of domestic violence."[30] It found that Thomas's "arrest in November 2008 and instances of property damage did place the mother in reasonable fear. The father also engaged in a pattern of financial control, surveillance of the mother, and isolation of the family and mother."[31] Substantial evidence justifies the domestic violence finding. Courtney testified "the police were called in 2008 . . . we were struggling and he went for the door and we both went down the

---

[27] Appellant's Br. at 6, 7.

[28] RCW 26.09.191(1), (2)(a).

[29] RCW 26.50.010(3).

[30] CP at 518.

[31] CP at 529 (finding of fact 15).

8

stairs."[32] The GAL testified that Thomas, in anger, punched holes in the wall and broke down a door. The GAL described financial control including "put[ting] her on an allowance. She didn't have money. She had to borrow money from her parents for basic things like gas, car maintenance, laundry. . . . [T]he bank statements I reviewed supported that she was given very little money by her then husband to live on each day."[33] Thomas points to his own testimony to undermine the domestic violence finding, but "[s]o long as substantial evidence supports the finding, it does not matter that other evidence may contradict it."[34] Thomas fails to prove that the trial court abused its discretion when limiting his decision making due to the domestic violence finding.

In spite of its finding of domestic violence, the trial court declined to limit Thomas's residential time under RCW 26.09.191, finding that T.J. "suffered a significant loss with the passing of his sister. He has a strong bond with both parents and limiting the Father's time with him with the unique circumstances of this case would be detrimental to his best interests as identified by the GAL and adopted by the undersigned."[35] Rather, the trial court weighed the factors in RCW 26.09.187(3)(a) to determine the best interests of the child and ordered that T.J. live primarily with Courtney, spending every other weekend and Wednesdays with Thomas. The trial court found that

---

[32] RP (Feb. 2, 2017) at 237.

[33] RP (Jan. 30, 2017) at 65-66.

[34] Burrill, 113 Wn. App. at 868.

[35] CP at 519.

> [t]he parenting plan entered in the separate order is in the best interests of TJ and encourages each parent to maintain a loving, stable, and nurturing relationship with the child . . . . Each parent has historically met the child's needs and has the future ability to do so with the ordered interventions and/or support. The records submitted and considering the testimony understanding that the circumstances of Maria's hospitalizations placed these parents in a difficult situation to meet her needs as well as TJ's and even discounting this timeframe as not representative of regular parenting, but crisis parenting – the mother has historically taken greater responsibility for performing the parenting functions relating to the daily needs of the child.[36]

The court's finding that Courtney has historically taken greater responsibility for T.J. is supported by substantial evidence. Courtney explained that if she had the majority of residential time, she "would be able to continue what I have been doing for my son[ ] the majority of his life . . . as the primary parent."[37] When discussing her struggles with mental illness in 2008, Courtney said that Thomas "still didn't adjust his work schedule at all. I was still home with the kids all day and all night."[38] Thomas argues that the trial court abused its discretion when "discounting" the time of Maria's hospitalizations as not representative of regular parenting. But the trial court explained that this was a period of crisis parenting. It was not manifestly unreasonable for the court to conclude that the period of crisis parenting was not reflective of the parents' past and potential for future parenting functions.

---

[36] CP at 530 (finding of fact 25).

[37] RP (Feb. 1, 2017) at 154-55.

[38] Id. at 180.

The procedural deficiencies in Thomas's appeal preclude our review. Further, Thomas applies the wrong standard of review, asking that we reweigh the evidence. And even if we did entertain the merits of Thomas's appeal, we would find that the parenting plan restrictions and residential schedule were not an abuse of discretion.

We affirm.

WE CONCUR: