IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of AHMAD ZARGAR, | ) ) ) | No. 77859-5-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| STEPHANIE ZARGAR, | ) ) | |
| Appellant. | ) | FILED: May 13, 2019 |

PER CURIAM — In the dissolution of Stephanie and Ahmad Zargar's marriage, the trial court divided the couple's assets and liabilities to achieve a 50-50 division. Stephanie appeals, but our review is precluded by various procedural deficiencies. Even if we could ignore these, Stephanie fails to meet her burden to show that the trial court abused its discretion in the division of property. We affirm.

FACTS

Stephanie and Ahmad Zargar married in 1987. They had two children during their marriage, both of whom were adults at the time of trial. During much of the marriage, Ahmad worked for Hitachi Data Systems in a number of roles. Stephanie also worked but was injured at work in 2011. Stephanie became unable to work and received $1,639 monthly in Social Security disability and $460 monthly from another source.

The couple separated in July 2014. Ahmad left Hitachi shortly after. In February 2015, Ahmad went to Iran to care for his father. In August and September of that year while Ahmad was in Iran, Stephanie withdrew $92,097 from the couple's bank and retirement accounts. She also removed furniture and jewelry from the family home.

On January 26, 2016, Stephanie executed a quitclaim deed of the family home in favor of Ahmad, relinquishing her interest in the house. The house was valued at $749,000 but was encumbered by $743,693 in debt.

Ahmad returned to the United States in May 2016. He was unable to find work similar to that which he performed at Hitachi so he worked as a contract delivery driver earning an average monthly wage of $2,257.

In August 2016, Stephanie forged Ahmad's name on the joinder of a petition for dissolution and obtained a decree of dissolution order awarding her substantial maintenance. Upon learning of the decree, Ahmad filed a motion to vacate, which the court granted. Ahmad filed a petition for dissolution on August 9, 2016. In September, he obtained a restraining order against Stephanie lasting 12 months.

Prior to trial, Stephanie did not comply with court orders to provide discovery. At the time of trial in October 2017, she was involved in an ongoing worker's compensation claim related to her injury. She reported to Ahmad that she also had a claim for damages against her employer valued between $750,000 and $1,000,000 but provided no evidence to the court on the value or nature of her claim.

The trial court heard two days of testimony, with Stephanie representing herself. With respect to Stephanie's credibility, the trial court found, "The wife's dishonest and

fraudulent behavior causes this court concern and has made it difficult to believe any of her representations made to this court."

The trial court awarded no maintenance. With a net deficit of $41,474 in assets, the trial court aimed to achieve a 50-50 division of property and liabilities. Stephanie was awarded a vehicle, the funds that she had withdrawn from the couple's accounts after separation, and the missing furnishings and jewelry. Ahmad was awarded the family home, a vehicle, the remainder of the depleted retirement account, a lien on half of Stephanie's personal injury claim, and a judgment against Stephanie for $175,000. Ahmad was assigned all community debts.

The trial court also granted a permanent restraining order protecting Ahmad. Appearing pro se, Stephanie appeals.

ANALYSIS

We review dissolution orders for abuse of discretion. In re Marriage of Wilson, 165 Wn. App. 333, 339, 267 P.3d 485 (2011). "We treat the trial court's findings of fact as verities on appeal so long as they are supported by substantial evidence." In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). Evidence is substantial when it is sufficient to " 'persuade a fair-minded person of the truth of the matter asserted.' " Id. (quoting In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)). "So long as substantial evidence supports the finding, it does not matter that other evidence may contradict it." In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). This court does not review the trial court's credibility determinations or weigh conflicting evidence. Black, 188 Wn.2d at 127 (citing In re Welfare of Sego, 82 Wn.2d 736, 740, 513 P.2d 831 (1973)).

3

The law does not distinguish between litigants who choose to proceed pro se and those who seek assistance of counsel. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Both must comply with applicable procedural rules. Id. We generally will "not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." Cook v. Brateng, 158 Wn. App. 777, 794-95, 262 P.3d 1228 (2010) (citing RAP 10.3(a); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990); State v. Camarillo, 54 Wn. App. 821, 829, 776 P.2d 176 (1989), aff'd, 115 Wn.2d 60, 794 P.2d 850 (1990)).

Stephanie fails to comply with these requirements. Her brief makes no assignments of error, has no citation to relevant authority, no citation to the record before the court, and no meaningful analysis. Her brief consists mainly of a recitation of facts that are not supported by the record, with few discernable legal arguments.[1] While Stephanie's reply brief does contain assignments of error, we do not consider any issues that were argued for the first time in a reply brief. In re Marriage of Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). These fatal deficiencies preclude our ability to fairly and fully apply the standard of review.

However, to the extent possible, we have considered the merits of Stephanie's claims. She primarily challenges the trial court's property distribution.

---

[1] Stephanie attaches two articles to her brief. One is entitled, "Enforcement of Islamic Dowry" and the other, "Maintenance in Washington: Spousal Support." The latter is not relevant authority because Stephanie does not argue in her opening brief that the trial court erred in awarding no maintenance. She also attaches to her brief an undated letter from her worker's compensation attorney. The letter was not before the trial court, and Stephanie fails to comply with RAP 9.10 related to correcting or supplementing the record.

In a dissolution proceeding, all property, both community and separate, is before the court for distribution. In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). The trial court has broad discretion to make a just and equitable distribution of the property based on the factors enumerated in RCW 26.09.080.[2] In re Marriage of Rockwell, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). A division of property need not be precisely equal; rather, it must be fair to both parties depending on their circumstances at the time of dissolution. RCW 26.09.080; Rockwell, 141 Wn. App. at 243. Because the trial court is in the best position to determine what is fair and equitable, its decision regarding the distribution of property will be reversed only upon a showing of a manifest abuse of discretion. Rockwell, 141 Wn. App. at 242-43.

Stephanie argues that the trial court erred in allocating to her the fair market value of furniture that was removed from the family residence. She contends that Ahmad authorized her to send the furniture to their son, and that other occupants of the family home had disposed of some property. The trial court found that "[f]urniture and [f]urnishings from [the] family residence [were] removed by [the] wife and not accounted for." In the property distribution, the court allocated $17,666 to Stephanie for the fair market value of those items. Stephanie also argues that the trial court erred by allocating to her the value of jewelry that was stolen from her home as well as the

---

[2] RCW 26.09.080 provides that a trial court shall distribute property in a "just and equitable" manner after considering the following nonexclusive factors:
    (1) The nature and extent of the community property;
    (2) The nature and extent of the separate property;
    (3) The duration of the marriage or domestic partnership; and
    (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

insurance payment that she received for those stolen items.[3] The trial court found that the "[j]ewelry [was] taken by [the] wife from [the] residence in [an] alleged [b]urglary." While Stephanie does not cite to the record to support these arguments, to the extent she relies on her own testimony in support of her arguments, the trial court found her not credible. We do not reweigh credibility determinations. Black, 188 Wn.2d at 127.

Next, Stephanie contends that "[t]here was a Dowry belonging to Ms. Zargar, which had been interpreted, certified and presented to [the trial court] for consideration for asset division. [The trial court] erred." With respect to the dowry, the trial court found:

> The parties entered into a Sharia marriage on November 8, 2009, so that the wife would be able to obtain a visa to travel to the country of Iran. Said marriage certificate was entered into evidence along with the translation. The court finds, however, that language was added to that certificate after the husband had signed the same. That language stated: "MARRIAGE DOWRY - One volume of the Holy Koran, one Gold ring, a branch of Rose, and 300 Bahar Azadi whole Gold Coins." The wife's position at trial was that this language meant she was to receive these items upon a divorce from the husband. However, the plain language is that this was to be a dowry and the common and ordinary meaning of "dowry" is that it is the property brought into the marriage by the wife. The evidence at trial is that the wife never brought such property into the marriage. The court finds that this marriage certificate, whether the language was added or not, has no impact upon the court's findings and decree to be entered in this matter.

Substantial evidence supports this finding. Ahmad testified that the parties had a second marriage under Sharia law. Ahmad testified that he and Stephanie did not discuss or agree to a dowry when they entered their Sharia marriage in 2009. He testified that the dowry language was added after the marriage. Stephanie did not

---

[3] Additionally, Stephanie argues that the trial court "never even considered" $9,000 that she contends Ahmad owes her. But she fails to cite evidence in the record supporting the existence of this debt, and we could find none.

testify on this subject. She includes with her opening brief an article entitled, "Enforcement of Islamic Dowry." While the article provides some context to the Islamic dowry, it affirms its contractual nature. Substantial evidence supports that the parties did not agree to the dowry. The trial court did not abuse its discretion by disregarding the marriage certificate.

Stephanie argues that the trial court erred by including a personal injury claim as an asset to be divided by the court. She contends that she has only a worker's compensation claim, not a personal injury claim. The trial court found, with respect to "Wife's Personal Injury/Worker's Compensation Claim," that "the wife was injured at work in her place of employment . . . . The wife is presently involved with a claim for damages." The court found that Stephanie's failure to provide information regarding the claim made it "difficult for the court to make such a finding as to value. Accordingly, the only alternative for the court to award this claim is to divide it equally between the parties." Substantial evidence supports that Stephanie has a claim for damages related to her workplace injury. Ahmad testified that Stephanie "told me at one point that she's filing a claim against [her employer] and [her employer's insurance company]" and that "this case is probably [$]750,[000 to] $1,000,000." Given the information related to Stephanie's claim that was before the court, it was not an abuse of discretion to grant the husband a lien against a possible personal injury claim.[4]

Stephanie argues, with respect to the permanent restraining order, that if she had "caused such a disturbance to Mr. Zargar and this order was genuinely needed, . . . [h]e

---

[4] Further, there is no harm to the parties if, as Stephanie argues, there is no personal injury claim from which the husband may recover.

7

would not have let it lapse."[5] Stephanie apparently refers to the temporary restraining order that expired before trial in September 2017. The trial court found that Stephanie "represents a credible threat to the physical safety of [Ahmad]." Substantial evidence supports this finding. Ahmad testified that Stephanie

> has actually broken into my home several times. She has, even when we got the first restraining order and she came to grab some of her stuff, . . . she did tell me that, you know, "You better watch out." The fact that right now, her sister, who is on the witness list, who is outside, she actually has called my home, my brother's house, and threatened me and my brother. . . . "You guys better watch out. I know where you guys live, and you better watch out for your family."

The trial court did not err.

Ahmad requests attorney fees and costs on appeal under RCW 26.09.140 and RAP 18.1 and .9(a). The appellate court has discretion to order a party "to pay terms or compensatory damages to any other party" if the party files a frivolous appeal or fails to comply with the rules of appellate procedure. RAP 18.9(a). " '[A]n appeal is frivolous if it raised no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists.' " Hanna v. Margitan, 193 Wn. App. 596, 615, 373 P.3d 300 (2016) (alteration in original) (quoting Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 220, 304 P.3d 914 (2013)). We agree that Stephanie raises no debatable issues on appeal. Her arguments are so devoid of merit that no reasonable possibility of reversal exists. Further, she violates the rules of appellate procedure by failing to apply the appropriate

---

[5] Stephanie also discusses the vacated decree of dissolution and the temporary restraining order that Ahmad obtained in September 2016. Stephanie does not appeal either of these orders and concedes in her reply that she is not appealing the order vacating the fraudulent decree of dissolution. While she does appeal the permanent restraining order granted with the divorce decree, she did not appeal the temporary order. Therefore, we do not consider her arguments respecting either of these orders.

standard of review, cite to relevant legal authority, or support her argument with citations to the record. Therefore, we exercise our discretion to award Ahmad attorney fees on appeal subject to compliance with RAP 18.1.

We affirm.

For the Court:

Mann, A.C.J.

Appelwick