# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

SHANNON ANDERSEN,

                Respondent,

and

MICHAEL ANDERSEN,

                Appellant.

DIVISION ONE

No. 81847-3-I

UNPUBLISHED OPINION

DWYER, J. — Michael Andersen appeals from the decree dissolving his 13-year marriage to Shannon Andersen. Michael contends that the trial court abused its discretion because, he claims, the distribution of assets and liabilities left the parties in "unequal positions" for the rest of their lives. We affirm.

I

In November 2017, Shannon petitioned for dissolution.

At the time of the dissolution trial, the parties had three children, who were 7, 9, and 12 years old. Also at this time, Shannon resided with the children in the family home in Sequim. She and Michael purchased the home during their marriage. Michael resided in California.

The parties agreed to a parenting plan and child support, which were each approved by the trial court. Under the parenting plan, the children were to reside

with Shannon for the vast majority of the time.[1]  Michael agreed to pay approximately $1,629 per month in child support.

On June 24, 2019, the remaining issues went to trial.  The primary issues were (1) the distribution of the family home, (2) the distribution of three pensions, and (3) the assignment of community debt.[2]  The parties stipulated that the value of the family home was $245,000.  After trial, the court found that the present value of the three pensions was, in total, $188,566.87 and the community debt amounted to $44,000.  These findings of fact are unchallenged on appeal.  See RAP 10.3(g).

Throughout their marriage, Michael worked as a member of a sheet metal union.  By the time of trial, he had been so employed for approximately 15 years.  From this employment, Michael had acquired an interest in the three pension plans that were at issue at trial.

Shannon worked as a stay-at-home spouse and home schooled the three children.  Shannon testified that she had a high school education.  In 2003, Shannon attended culinary school to become a pastry chef and, prior to having children, worked as a pastry chef for about one and a half years.  In that position, she earned approximately $10 per hour.  After the parties separated in 2017, Shannon began working nearly 40 hours per week as a purchaser, making $16

---

[1] The trial court characterized her obligation under the parenting plan as follows: "[Michael] has moved from the area and [Shannon] is therefore responsible for the total care of the children on a day to day basis.  The youngest child is seven years old.  For the next eleven years she is likely forced to live pay check to pay check to ensure stability for the children."

[2] Although Shannon requested an award of maintenance in the petition for dissolution, she did not state how much maintenance she was seeking either in the petition or at trial. Furthermore, Shannon did not request an award of attorney fees in either the petition or at trial.

per hour. Shannon testified that, to receive a higher income, she would need more education. When asked whether she had looked into any educational programs, Shannon stated that the children were too young for her to balance pursuing an education on top of work and raising the children. In addition, Shannon testified that she had no personal credit history or rental history.

In 2018, Shannon's gross annual income was $29,212. That same year, Michael's gross annual income was $91,974. The trial court found that "[Michael] has excess income of $3,932 each month. From this he will pay $1,628.93 in child support, leaving a monthly excess of $2,303.07. Put into perspective, this amounts to $27,636 each year in funds over his stated needs."

In its dissolution decree, the trial court awarded the family home to Shannon and the three pensions to Michael. Additionally, the trial court assigned the community debt to Michael.

Michael appeals.

II

Michael contends that the trial court abused its discretion. This is so, he asserts, because its distribution of assets and liabilities left the parties in "unequal positions" for the rest of their lives.[3] We disagree.

A trial court "ha[s] broad discretion in the distribution of property and liabilities." In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

---

[3] Michael quotes our decision in In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007), for the proposition that a trial court must place the parties in "roughly equal" positions. ("In a long term marriage of 25 years or more, the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives."). The parties herein were married for half of that time. And nothing in Rockwell supplants the statutory directive of RCW 26.09.080, as discussed infra.

Accordingly, "[a] property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion." In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "This occurs if the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons." In re Marriage of Wright, 179 Wn. App. 257, 261-62, 319 P.3d 45 (2013).

The essential consideration is whether the final distribution is fair, just, and equitable. RCW 26.09.080. Factors to be considered are (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of the parties. RCW 26.09.080. "Just and equitable distribution does not mean that the court must make an equal distribution." In re Marriage of DewBerry, 115 Wn. App. 351, 366, 62 P.3d 525 (2003).

Here, the trial court (1) awarded the family home to Shannon, (2) awarded the three pensions to Michael, and (3) assigned the community debt to Michael. The parties stipulated that the value of the family home was $245,000. Additionally, the trial court found that the pensions were worth $188,566.87 and that the community debt amounted to $44,000. These findings are both unchallenged on appeal and supported by substantial evidence in the record.

The trial court did not err in distributing the assets and liabilities among the parties. In distributing assets and liabilities, trial courts should consider

> [t]he economic circumstances of each spouse or domestic partner
> at the time the division of property is to become effective, including
> the desirability of awarding the family home or the right to live

therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

RCW 26.09.080(4).

Notably, at the time of trial, Shannon was living in the family home with the three children, who were 7, 9, and 12 years old. Michael, however, had moved to California. Under the parties' parenting plan, the children were to reside with Shannon the vast majority of the time. Thus, it was sensible for the family home to be awarded to Shannon.

Other evidence also influenced the trial court's decision. Shannon had no personal credit history or rental history. In 2018, Shannon's gross annual income was $29,212 whereas Michael's was $91,974. Shannon testified that she did not expect to receive a substantial raise in her current job position. In declining to order that the family home be sold, the trial court observed that "[i]t would be fundamentally unfair to put [Shannon] in a position where her property award would be consumed by monthly rental payments." This was a reasonable assessment. Indeed, "[t]he trial court is in the best position to assess the assets and liabilities of the parties and determine what is 'fair, just and equitable under all the circumstances.'" Brewer, 137 Wn.2d at 769 (quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)). The trial court did not err by awarding the family home to Shannon.

The trial court also properly exercised its discretion by assigning the $44,000 in community debt to Michael. In so doing, the trial court explained that Michael generated substantially more income than Shannon and that "he is the only party who has the present financial means to handle this debt."

5

Trial courts should consider the economic realities surrounding each party when allocating liabilities:

> [T]he court shall . . . make such disposition of the property and the liabilities of the parties . . . as shall appear just and equitable after considering . . . [t]he economic circumstances of each spouse . . . at the time the division of property is to become effective.

RCW 26.09.080(4).

While Shannon worked as a stay-at-home spouse during their marriage, Michael built a career as a union sheet metal worker. At the time of dissolution, Michael had worked in that role for approximately 15 years. Again, in 2018, Michael's gross annual income was $91,974. The trial court found that Michael's income generated "$27,636 each year in funds over his stated needs." This finding is both supported by substantial evidence and is not the subject of an assignment of error.[4] See RAP 10.3(g).

Shannon, however, started working as a purchaser in October 2017, earning $16 per hour. Although Shannon had worked as a pastry chef prior to having children, she had earned approximately $10 per hour in that position. In 2018, Shannon's gross annual income was $29,212, less than one third of Michael's gross annual income for that same year. Shannon testified that, to generate more income, she would need more education. However, the children

---

[4] Michael asserts that the trial court, in determining Shannon's monthly excess income, improperly failed to consider that Shannon would not be required to make payments toward the community debt. As a result, according to Michael, the trial court incorrectly determined that Shannon would not generate enough income to cover her monthly expenses. Michael does not, with reference to the evidence, establish that this assertion, if accurate, undercuts the trial court's analysis of the parties' relative economic circumstances.

were too young for her to pursue further education while working and raising the children.

In short, the trial court properly considered each party's economic circumstances prior to assigning the community debt. Because Michael was in a superior financial position to assume the community debt, the trial court did not err in assigning the entirety of the debt to Michael.

Given that the trial court awarded the family home to Shannon and assigned the community debt to Michael, it acted within its discretion by awarding the entirety of the three pensions to Michael. In weighing the value of the family home against the value of the pensions, the trial court noted:

> [Shannon's] ability to maintain [the family] house is a large part of [the children's] stability. The cost of that stability, for her, is less security during her retirement years. The cost of that stability, for [Michael], is more uncertainty in housing at the present time, but far more stability in his retirement years. Additionally, he has the benefit of knowing that his children live in stable circumstances at this time.

The trial court reached a just and equitable division of the parties' assets and liabilities. After all, "[a] just and equitable division 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of the parties.'" In re Marriage of Larson, 178 Wn. App. 133, 138, 313 P.2d 1228 (2013) (quoting In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)). The family home was worth $245,000 and the pensions were worth $188,566.87. In arriving at its decision, the trial court evaluated how the awards would impact each party's present and future needs. On the one

7

hand, the trial court found that awarding the family house to Shannon gave her more stability in the present but less financial security in the future. On the other hand, the trial court found that awarding the three pensions to Michael gave him more financial security in the future, but less stability in the present. Additionally, the trial court found that Michael was in a superior financial position to assume the community debt. The award was not precisely equal, but it was equitable.

Accordingly, the trial court did not err by (1) awarding the family home to Shannon, (2) awarding the pensions to Michael, and (3) assigning the community debt to Michael.

III

Notably, the trial court did not award spousal maintenance or attorney fees to Shannon. In declining to do so, the trial court reasoned as follows:

> [Michael] will receive property valued at $188,566.87. He will assume debts of $44,000 leaving him a net award of $144,556.87. [Shannon] will receive assets of $245,000. Of the total net estate of $389,566.67, [Michael] will receive 37 percent, and [Shannon] will receive 63%. . . . Because of this distribution, the court is not awarding spousal maintenance or attorney fees to [Shannon].

Although the trial court's decision to not award spousal maintenance or attorney fees was proper, the trial court would not have abused its discretion had it incorporated such awards into its decree.

A

Maintenance awards are "flexible tool[s] by which the parties' standard of living may be equalized for an appropriate period of time." In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). It is within a trial court's discretion to award maintenance based on the factors enumerated in RCW

8

26.09.090. The nonexclusive list of factors includes (a) the financial resources of the party seeking maintenance; (b) the time necessary for the maintenance seeker to become employed; (c) the marital standard of living; (d) the marriage's duration; (e) the maintenance seeker's age, physical and mental conditions, and financial obligations; and (f) the ability of the maintenance payer to meet his or her needs in addition to those of the maintenance seeker. RCW 26.09.090. The primary consideration in awarding maintenance is the parties' economic positions following the dissolution. In re Marriage of Spreen, 107 Wn. App. 341, 348, 28 P.3d 769 (2001).

Michael was in a superior economic position to Shannon following the dissolution, having substantially more financial resources than her. Again, in 2018, Michael's gross annual income was $91,974, and Shannon's was $29,212. Each year, Michael generated over $27,000 in funds over his stated needs. Although some of Michael's excess income will undoubtedly go toward paying the $44,000 in debt that the trial court assigned to him, the trial court's dissolution decree still left Michael in a superior economic position, as compared to Shannon. Indeed, Michael was awarded the entirety of the three pensions that were in dispute. Thus, even though the trial court awarded the family home to Shannon, Michael has far more security in his retirement than Shannon has in hers. This left Shannon with a need to establish a retirement plan despite raising three children, working nearly 40 hours per week, and making $16 per hour.

Moreover, Shannon testified that she did not expect to receive a substantial raise in her current position and that, to generate a higher income,

9

she would need more education. When asked whether she had looked into any educational programs, Shannon stated that the children were too young for her to balance educating herself on top of the raising the children and working. At the time of the trial, the youngest of the three children was seven years old. Accordingly, Shannon's ability to generate a higher income was uncertain.

Given these facts, an award of maintenance could have been part of the trial court's resolution of this matter. That the trial court chose not to do so is a benefit to Michael and is a factor that we properly consider in evaluating the equitability of the decision that the court actually did make.

B

In addition, the trial court would not have abused its discretion had it decided to award attorney fees to Shannon. Whether an award of attorney fees and costs should be allowed in a dissolution proceeding, and the amount thereof, is a matter within the sound discretion of the trial court. Kruger v. Kruger, 37 Wn. App. 329, 333, 679 P.2d 961 (1984). Pursuant to RCW 26.09.140,[5] a trial court has discretion to award attorney fees and other costs of litigation when one party has a financial need for such an award and the other party has the ability to pay. Shannon did not request attorney fees and the trial court did not award them.[6]

---

[5] RCW 26.09.140 provides:
The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

[6] There was also no evidence presented regarding the amount of attorney fees or litigation costs Shannon incurred.

10

Nonetheless, because Shannon's financial resources were limited and Michael's income exceeded his monthly needs, the trial court would not have abused its discretion had it decided to award attorney fees.

As with maintenance, the fact that the trial court chose not to make such an award was of benefit to Michael. This is a factor that we properly consider when evaluating the equitability of the decision that the trial court actually made.[7]

Affirmed.

_____
Dwyer, J.

We concur:

_____    _____
Brennan, J.                  Dwyer, J.

---

[7] In accordance with this analysis, we deny Shannon's request for an award of attorney fees on appeal.